WIRT ADAMS, STATE REVENUE AGENT, *v.* STANDARD OIL COMPANY OF KENTUCKY.

[53 South. 692.]

1. CONSTITUTIONAL LAW. *Fourteenth amendment to constitution of United States. Equal protection of the laws. Person. Foreign corporation.*

A corporation doing business within a state other than the one of its creation, having an office and agent therein and subject to the process of its courts, is a "person" within the meaning of the equality clause of the fourteenth amendment to the federal constitution.

2. SAME. *Same. Classification.*

Mere legislative classification is insufficient to relieve a statute from the operation of the equality clause of the constitution; classification must be based on some reasonable ground, and some real difference, bearing a just relation to the object sought, since arbitrary selection and discrimination is prohibited and "equal protection of the laws" means subjection to equal laws applicable alike to all in the same situation.

3. SAME. *Same. Same. Privilege taxes. Peddlers. Statutory construction.*

> Code 1906, § 3849, imposing license taxes on peddlers, but providing that any resident of the state, over sixty years of age who has lost a limb or an eye or is otherwise unable to earn a support for himself by labor, and whose *taxable* property is less than five hundred dollars, may peddle in the county of his residence without paying the tax:—
>
> (*a*) Is rendered ambiguous and absurd by the use of the word *taxable* in the proviso, if full effect be given the word; but
>
> (*b*) To carry out the intention of the legislature the word *taxable* should be disregarded, thereby exempting from the tax all aged residents who are impecunious and physically disabled; and
>
> (*c*) So construed the classification is a valid one, based on existing conditions, founded on reason and justice, and not violative of the equality clause of the constitution.

4. SAME. *Same. Confederate soldiers. Statutes. Partly valid. Separable provisions.*

> Code 1906, § 3895, in so far as it attempts to create a class of confederate soldiers, and exempt them from the payment of certain privilege taxes:
>
> (*a*) Is not a valid constitutional classification; is based on a purely artificial distinction, and therefore a violation of the equality clause of the federal constitution; but
>
> (*b*) This does not invalidate the entire privilege tax act, under the rule that if a statute attempts to accomplish two or more objects, and is void as to one, it may still stand as to the other; it appearing from the policy of the state that the legislature would probably have enacted the balance of the statute without the exemption, had it known that the same was invalid.

5. EVIDENCE. *Judicial notice. Governmental records.*

> Courts take judicial notice of the records of co-ordinate branches of the state government, in order to determine the policy of the state in the enactment of statutes.

FROM the circuit court of, first district, Hinds county.

HON. WILLIAM A. HENRY, Judge.

Adams, state revenue agent, appellant, was plaintiff in the court below; the oil company, appellee, was defendant there. From a judgment in defendant's favor plaintiff appealed to the

supreme court.    The facts of the case, as stated by ANDERSON J.,
were as follows:

This is a suit by the appellant, Adams, state revenue agent,
begun in the circuit court of Hinds county, against the Standard
Oil Company of Kentucky, the appellee, on behalf of the state,
as well as on behalf of one hundred and forty seven municipali-
ties therein, to recover from the appellee privilege license taxes,
alleged to be due by it to the state of $52,040, and to such mu-
nicipalities, of $24,990, making the total amount sued for
$77,030.    The appellee demurred to the declaration, which de-
murrer was sustained by the court below; and, appellant declin-
ing to amend, judgment was entered dismissing the suit, from
which judgment this appeal is prosecuted.

The material averments of the declaration are as follows:
That the appellee is a Kentucky corporation, doing business in
this state, with an office and agents in the city of Jackson, Hinds
county; that during the year 1903, and continuously thereafter,
up to the bringing of this suit, appellee had been engaged,
throughout the seventy-eight counties of this state, and in one
hundred and forty-seven municipalities therein (naming them),
in the business and exercising the privilege of peddling from
two-horse wagons illuminating and lubricating oil and axle
grease, vending the same from house to house; that under the
laws of this state appellee was required to pay the state a privi-
lege tax of $50 per annum for each county for the years 1903,
1904, and 1905, and of $40 for the years 1906 and 1907, and
of $80 for the years 1908 and 1909; that each of said munici-
palities, as authorized by law, had adopted, and had in force
during the whole of said period, ordinances providing a privi-
lege license tax on peddlers with two-horse wagons, vending
goods and merchandise therein, of 50 per cent. of the state tax
for each county; that during said period, from 1903 to 1909,
inclusive, appellee wholly made default in the payment of said
tax, either to the state or said municipalities; the amount due

the state for said period being $26,020, which under the law is doubled as a penalty for failure to pay, and the amount due such municipalities being $24,990, making a total due the state and municipalities of $77,030, the amount sued for.

The ground of demurrer relied on the argument, and passed on by the court, is that the statutes, by virtue of which the privilege taxes are sought to be recovered, are repugnant to the equal protection clause of the fourteenth amendment to the Constitution of the United States in this (using the language of the demurrer) : "That the same are discriminatory, and do not impose privilege taxes equally and alike on all peddlers of the class named; in that by the said statutes it is provided that the privilege tax sought to be imposed upon peddlers shall not be paid by any person resident of any county in this state who is over sixty years old and has lost a limb or an eye, or who is otherwise unable to earn a support for himself by labor, and whose taxable property is less than $500 ; and also because in and by such statutes it is provided that any Confederate soldier may exercise the privilege within the county of his residence of a peddler without paying such privilege tax; and also, thirdly, because in and by such statutes it is provided that any person blind, or deaf and dumb, or maimed by the loss of a hand or foot, or any Confederate soldier, may exercise the business and calling of a peddler without the payment of such privilege tax, if he exercises the privilege exclusively for himself and family, and resides in this state, and does not own taxable property in the excess of $1,000, either in his own name or in his wife's name."

*Harris & Potter* and *Tim E. Cooper,* for appellant.

It is not necessary in this case to make a declaration as to whether the exemption of Confederate soldiers is valid or not, for the reason that if the same is unconstitutional, it is nevertheless separable from the other provisions of the revenue law,

and they must stand regardless of whether the exemption is valid or invalid.

In the case of *Field v. Clark,* 143 U. S. 149, the rule is stated: "Unless it be impossible to avoid it, a general revenue statute should never be declared inoperative in all of its parts because a particular part relating to a distinct subject may be invalid."

In the case of *Huntington v. Worthen,* 120 U. S. 97, on the question of the invalidity of an act of the legislature of Arkansas to exempt property where the state constitution provided that all property subject to taxation shall be taxed according to value, and that no species of property from which a tax may be collected, shall be taxed higher than another species of property of equal value." The court held that "The constitutional part of the statute was separable from the remainder. The legislature declared that in making its statement of the value of its property the railroad company should omit certain items; this clause being held invalid, the rest remained unaffected and could be fully carried out. An exemption, which was invalid, was alone taken from it. It is only where different clauses of an act are so dependent upon each other that it is evident the legislature would not have enacted one of them without the other, as when the two things provided are necessary parts of one system, that the whole act will fall with the invalidity of one clause. When there is no such connection and dependency, the act will stand, though different parts of it are rejected."

In *Allen v. Louisiana,* 103 U. S. 80, the rule is declared to be: "The point to be determined in all such cases is whether the unconstitutional provisions are connected with the general scope of the law as to make it impossible, if they are stricken out, to give effect to what appears to have been the intention of the legislature."

In *Rothermel v. Myerele,* 9 L. R. A. 366, the Pennsylvania court states the rule to be as follows: "A statute may be void

only so far as its provisions are repugnant to the constitution; one provision may be void and this will not affect other provisions of the statute, if the part which is unconstitutional in its operation is independent of, and readly separable, so that the latter may stand by itself."

In volume 1 Sutherland (2d ed.) on Statutory Construction, 576, the rule is stated thus: "The court is not warranted in declaring the whole statute void unless all the provisions are connected in subject matter, depend on each other, were designed to operate for the same purpose, or are otherwise so dependent in meaning that it cannot be presumed that the legislature would have passed one without the other. The constitutional and unconstitutional provisions may even be expressed in the same section, or even in the same sentence and yet be perfectly distinct and separable, so that the first may stand though the last fall. The point or test is not whether they are contained in the same section, for the distribution into sections is purely artificial, but whether they are essentially and inseparably connected in substance."

In the case of *Ballard v. Oil Company,* 81 Miss. 507, Judge WHITFIELD says: "The test clearly is this: That whenever the court finds on the face of a statute a number of different provisions, some constitutional and some unconstitutional, there it may sever, if they be not interdependent, between these provisions striking out the unconstitutional; and, let it be marked, that in every such case, there is something to sever between on the face of the statute."

Sutherland gives the following miscellaneous acts held severable (2d ed.), 602:

An act for the incorporation and government of banks contained an invalid provision exempting stockholders from liability. It was held that this could be rejected and the balance sustained. *McGowan v. McDonals,* 111 Cal. 57.

An act which provides for the establishment of new roads and

an improvement of roads already established, an invalid provision for condemning the right of way for new roads will not affect the part as to the improvement of roads.  *Seanor v. County Com.,* 13 Wash. 48.

An act provided for the appointment of three election commissioners by the governor and required him to appoint one from three persons to be named by a party central committee. This requirement was held void and severable and the remainder of the act valid.  *State v. Washburn,* 167 Mo. 680.

An act creating a city court provided that cases in which the amount involved was not over $500 should be tried without a jury.  This was contrary to the constitution, which guaranteed the right of trial by jury in all cases.  This provision was held severable and the remainder of the act void.

In this case, the validity of our entire privilege chapter, with the exception of tax on liquor, cigarettes, deadly weapons, second-hand clothing, jenny lynd or pool tables, must stand or fall with the tax on peddlers.  It would be absurd to say that the tax on peddlers was alone unconstitutional, because under the various exemptions above set out, the Confederate soldier is required only to pay a privilege tax where the privilege is upon a calling that is in the nature of a nuisance, as saloonkeepers, dealers in cigarettes, deadly weapons, second-hand clothing, or keepers of jenny lynd or pool tables, and is exempt from paying privilege on all other callings.

The privilege tax has been a part of the revenue system of the state of Mississippi certainly since the year 1871, and it is hard to conceive that the legislature of the state would have seen proper to have changed its revenue system if the exemption to the Confederate soldier had failed.  In fact, regarding the long time that the state has resorted to privilege taxes to raise revenue, and continuing it for such a considerable time after the civil war before the exemption was made, it is manifest that if the amendment exempting Confederate soldiers had failed

of passage, that this system of taxation would not have been changed, but that some other expedient would have been resorted to for the purpose of aiding the veterans of the civil war.

In these acts, the passage of the privilege tax law did not depend upon the exemption; it was the law before the exemption and certainly would have been continued without it. The privilege tax does not depend upon the exemption, but the exemption is in the nature of an independent matter, and is not so connected and necessary to the balance of the act as to have been essential to the passage of the bill.

The court will bear in mind that all exemptions made to the Confederate soldier are by the way of amendatory acts, and we feel confident that counsel for appellant can find no case where the settled tax laws of a state are declared unconstitutional because some part of an amendment thereto may be condemned.

*Mayes & Longstreet,* for appellant.

The brief of the appellant in this case does not undertake to maintain the proposition that the legislature might constitutionally discriminate between citizens of the United States by exempting from the burden of these privilege taxes the Confederate soldier, as the statute has undertaken to do; but the effort of that brief is to maintain: First, that the provisions of the statute are separable; that the imposition of the tax is made in terms and by words which are separate and distinct from those conferring exemption to Confederate soldiers; and secondly, that it is only the exemption which would be void and not the tax imposition generally. In support of those propositions certain authorities are cited; but we respectfully submit not one of those authorities reaches this case. The appellant's brief does not expressly admit that such legislation would be void, even to the extent of the exemption; it only declines to treat that subject, saying we never got to it.

In the following brief we shall treat the matter as if our

fundamental proposition of the unconstitutionality of such leg-
islation had been controverted. But the two propositions are
very closely connected, and we shall treat the exemption, and
its unconstitutionality, incidentally in the general discussion.
It is not worth while to take two bites at the cherry. Appel-
lant's brief also undertakes to go back, in connection with these
propositions, through quite a number of years past, and gives
what purports to be a review of this legislation from a period
shortly after the end of the civil war. We think that it will
serve the purposes of convenience to consider the various periods
when the privilege tax law presented different phases, sepa-
rately; and we shall first treat the period of the immediate pres-
ent; that is to say, the years 1906 to 1909 inclusive, those being
four of the years about which this suit is brought.

Examining Code 1906, § 3849. We find that after imposing
the respective taxes, there is a proviso to the effect that any per-
son resident of the county in this state, who is over sixty years
old, and has lost a limb or an eye, or who is otherwise unable to
earn a support for himself by labor, and whose taxable property
is less than $500, may peddle in the county of his residence
without paying a privilege tax. The court will note that this
proviso is immediately and specially applied only to the case
of peddlers.

Section 3895 has a broader application. It is long and con-
tains several provisions, as follows: First. Any Confederate
soldier may exercise any of the following privileges in the
county of his residence without the payment of the privilege tax
(enumerating fourteen designated privileges). Secondly. Any
person, blind, deaf and dumb, etc. or any Confederate soldier
or the wife or widow of any Confederate soldier may exercise
any of the privileges taxed except that of dealing in liquor, etc.,
without the payment of the tax thereon, if he exercises the priv-
ileges exclusively for himself and family provided he resides in

this state, and does not own taxable property in excess of $1,000, either in his name or his wife's name.

It will, therefore, be seen that these exceptions from the obligation to pay privilege taxes are divisable into two general classes: First: Any Confederate soldier may exercise any one of the fourteen designated privileges without paying any privilege tax; and this special right is conferred upon such soldier without any regard whatever to any physical or financial disability upon him. He might be a hale and strong man and worth a million dollars, but still it is his privilege. Secondly. Infirm persons, and Confederate soldiers, and their wives and widows may exercise any of these privileges without the payment of the tax, provided they do not own taxable property in excess of $1,000.

Our argument will be addressed, in the main, to the exemption of the Confederate soldier pure and simple.

Let us see for a moment where that legislation lands us: First. It is a clear discrimination between the Confederate soldier, on the one hand, and all other citizens of the state, on the other. It is a discrimination made in favor of that class of citizens for no other reason on earth except that they served in the Confederate army. It is made without reference, as pointed out above, to their physical ability or disability, without reference to their financial condition. Secondly. In the same way, it is a discrimination in favor of the Confederate soldier, who necessarily was a white man, for during the civil war negroes were not received into the Confederate army, and all the colored citizens of this state, who constitute a majority of the state, and whose financial condition is much inferior to the white classes, and the great majority of whom are natural born citizens of this state. Thirdly. It is a discrimination in favor of the Confederate soldier against the Union soldier; the man who fought to break up the Union, and, in contemplation, at

least of the Federal laws and constitution was guilty of a crime, is given an invidious preference and privilege over and against the man who fought to maintain the Union and, in view of the Federal laws and constitution was a patriot and a hero; and this discrimination is given because of the fact, and because of no other fact, that the one was a Confederate soldier, and the other was not. The demurrer which was interposed in this case did not set up that this statute was violative of the Civil Rights law of congress enacted in 1870 and 1875, but it was, and is, against the very letter of that law. That statute is as follows:

"All persons within the jurisdiction of the United States shall have the same right in every state and territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property, as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses and executions of every kind, and to no other." Act of May 31, 1870, ch. 114, 16 U. S. Stat. L. 144.

We take it that, inasmuch as the statute in question was demurred to on the ground stated, this court can and will consider its relation to the Civil Rights Act, which was a product of, and in furtherance of, the Fourteenth Amendment.

So much by way of preliminary statement of this case.

There is plenty of authority on the precise point, and squarely in support of this demurrer.

A leading case is State v. Shedroi, 75 Vt. 277. In that case, the court will observe, a peddler's tax had been imposed by the Vermont statute, section 4732, and by a different section, to wit: by section 4733, persons resident of that state who had served as soldiers in the war for the suppression of the rebellion in the southern states, and were honorably discharged, were exempted from the payment of the license tax under that chapter. The only difference, therefore, is that in that case the

Union soldier, who fought for the maintenance of the Union and the Constitution, was exempted, while in this case, the Confederate soldier who fought for the lost cause, was exempted. The supreme court of Vermont reviewed a number of authorities, and while admitting fully and freely the right of the legislature to make classifications in the imposition of *ad valorem* or privilege taxes, it emphatically declares that: "All such regulations, and those of like character, so long as they proceed within reasonable limits and general usage, are within the discretion of the state legislature, or the people of the state in framing their constitutions. But clear and hostile discriminations against particular persons and classes, especially such as are of an unusual character, unknown to the practice of our governments, might be obnoxious to the constitutional prohibition. * * * Upon what basis does the attempted classification rest? There is no basis upon which it can rest except that the persons in the one class served as soldiers in the civil war, and were honorably discharged, and those of the other class did not so serve or were not honorably discharged. This classification is dependent solely on a condition of things long since past, and not on a present situation or condition, nor on a substantial distinction having reference to the subject matter of the law enacted. The veterans were originally from no particular class, and when discharged from the army they returned to no particular class—they again became a part of the general mass of mankind, with the same constitutional rights, privileges, immunities, burdens, and responsibilities, as other citizens similarly circumstanced in law in the same jurisdiction. Assuming that thus to have served as a soldier and to have received an honorable discharge, may well merit reasonable considerations at the hands of the state in recognition of patriotism and valor in defense of a common country, yet such considerations cannot exceed those constitutional limits established for the welfare and protection of the whole; for equal protection of the laws

requires that all persons subjected to such legislation shall be treated alike under like circumstances and conditions, both in the privileges conferred and the liabilities imposed (citing *Magoun v. Illinois Bank,* 170 U. S. 283). It cannot be said that service as a soldier in the civil war and the receipt of an honorable discharge, bear any relation to the business of a peddler as defined by the law under consideration. There is no difference between the present conditions and circumstances of such veterans and those of other citizens regarding the relations to the law or the attempted classification. In fact, according to their relations, they are of the same class, and any attempted classification between them is but a mere arbitrary selection, and based upon no reasonable grounds." The supreme court of Vermont, therefore, held that the whole statute was unconstitutional. They did not hold that section 4733, exempting the Union soldier, was unconstitutional, and hold that the Union soldier had to pay the tax, but they held the entire statute void. So also in *State v. Garbroski,* 111 Iowa, 496, peddler's case, section 1347 of the Iowa Code imposed a privilege tax upon peddlers, and in the section were two distinct sentences as follows: The first provided that the board of supervisors might remit the tax where the persons desiring to peddle because of age or infirmity were incapacitated for manual labor. The second sentence, and a distinct sentence it was, provided that "Nothing in this section shall be held to apply to parties selling their own work or production either by themselves or employees, nor to persons who have served in the Union army or navy, or to persons selling at wholesale to merchants, nor to transient vendors of drugs."

The court says that, "The particular point made is that as it grants immunity from the tax to peddlers who served in the army or navy of the United States during the civil war, it is in conflict with section 6, article 1, of the Constitution," etc.,

which is quoted. Of this law the Iowa court says as follows: "The classification here attempted rests solely on a past and completed transaction, having no relation to the particular legislation enacted. All citizens are divided into two classes— those who served in the army and navy thirty-five years ago, and all those who did not. True, as suggested, the veterans came from no particular class; but the trouble with this statute is that it attempts to make of them a class in legislation, in the operation of which there can be no substantial distinction between them and others. In present conditions and circumstances, there are no differences between them, in their relation to society and the administration of the law, and other citizens of the state. Possibly a veteran soldier or sailor should be preferred, everything else being equal, for civil office, because of superior fitness, resulting from discipline of service in war; for 'it is distinctly a public purpose to promote patriotism, and to make conspicuous and honorable any exhibition of courage, constancy, and devotion to the welfare of the state.' But the work of a peddler calls for no qualities such as a soldier or sailor acquired in the service. Equally in right, privilege, burdens, and protection is the thought running through the Constitution and laws of the state; and an act intentionally and necessarily creating inequality therein, based on no reason suggested by necessity or difference in condition or circumstances, is opposed to the spirit of free government, and expressly prohibited by the Constitution. * * * The classification attempted by this statute is based on no apparent necessity, or difference in condition or circumstances that have any relation whatever to the employment in which the veteran of the civil war is authorized to engage without paying license. It savors more of philanthropy (worthy of the highest commendation, in its proper sphere) than of reasonable discrimination, based on real or apparent fitness for the work to be done." And the

whole enactment, also, in this case was held to be void.  They did not merely hold, as this court is asked to hold, that the exemption is void, and the party pursued in that case had still to pay the taxes, but they discharged him of liability because of the avoidance of the law.  Here, too, the court will observe that the statute, according to the theory of the appellant, was clearly separable.  The objectionable provision was in a separate and distinct sentence from that part of the statute which imposes the tax generally.

See also the following authorities: *State ex rel. Wyatt v. Ashbrooke,* 154 Mo. 375; *State v. Gardner,* 58 Ohio St. 599; *Singer Co. v. Wright,* 97 Ga. 114; *Sayre v. Phillips,* 148 Pa. 482; *Pennsylvania v. Snyder,* 182 Pa. 630; *Chicago Railway Co. v. Westby,* 178 Fed. 619.

See also, as to the subject of discrimination, the following decisions by this court: *Ballard v. Mississippi Oil Co.,* 81 Miss. 507; *Rodge v. Kelly,* 88 Miss. 209; *Hyland v. Sharp,* 88 Miss. 567.

*As to separability.*—It is, however, claimed in the brief of appellant that, conceding the unconstitutionality of the effort to discriminate between Confederate soldiers and other persons, still the provisions in the statute are separable, and the only effect is that the exemption of the Confederate soldier is void, and the principal enactment of the statute, imposing privilege taxes for peddling, will stand, nevertheless.  We submit that such is. not the law.  The citations of authority in the brief for appellants do not in fact touch this question.  They only expound a general rule in a phase thereof which is not germane to this. case.  Regard the effect of the contention made by appellant. The exemption of the Confederate soldier being unconstitutional and void, supposing that the residue of the statute imposing peddling tax shall stand—then what results?  On that hypothesis, does the Confederate soldier have to pay a license tax, or

does he not? If he does not have to pay the license tax, but other people do, then we come out of the same hole we went in; and the Confederate soldier escapes the tax, not by virtue of a constitutional exemption, but by virtue of the fact that here is a law imposing a tax on certain classes of the people in the descriptive terms of which he is not included. The constitutional objection remains because there is discrimination, not by the express terms of the law exempting him, but by failure of the law to include him in the description of those who shall pay. The result cannot be worked out by indirection. *Fant v. Gibbs*, 54 Miss. 396, 407. On the other hand, is the Confederate soldier then required to pay the tax? If so, how? It is settled law in this state that privilege tax statutes are to be strictly construed; and no person is embraced within them except such persons as come clearly within their terms. Can it be possible that the incidence of this privilege tax can be made to fall upon a class of persons simply by a process of elimination of the exemption of the Confederate soldier; and thereby the statute applied to a class of persons to whom the very terms of the act declared that it shall not apply? We say not.

The following are some of the authorities on this line: *State v. Shedroi*, 75 Vt., *supra; State v. Garbroski*, 11 Iowa, *supra; Chicago Ry. Co. v. Weslby*, 178 Fed., *supra*.

In *Riccio v. Hoboken*, 69 N. J. Law, 649, there had been certain legislation providing for the management and support of free public schools, which, however, was discriminatory, and being so held, the question was reached which we are now considering, as to the effect on the statute of the existence of the unconstitutional feature in it. The New Jersey supreme court said as follows: "It is argued, however, that these unconstitutional features may be treated as excrescences upon the general scheme of the act, and may be totally disregarded, leaving the statutes in its main features to remain. Upon this question we

adhere to the declaration of Mr. Justice DEPUE, afterwards
chief justice, speaking for this court, in *Johnson v. State,* 59
N. J. L. 535, 539: 'It is undoubtedly elementary law that the
same statute may be in part constitutional and in part uncon-
stitutional and, if the parts are wholly independent of each
other, that which is constitutional may stand, and that which is
unconstitutional will be rejected; but, if the different parts of
the act are so intimately connected with, and dependent upon,
each other as to warrant a belief that the legislature intended
them as a whole, and that if all could not be carried into effect
the legislature would not have passed the residue independently,
and some parts are unconstitutional, all the provisions which
are thus dependent upon each other must fail.' In the absence
of any express declaration to the contrary contained in the act
itself, the presumption is that the legislature intended any given
enactment to be effective in its entirety. *Iowa L. Ins. Co. v.
Eastern Mut. L. Ins. Co.,* 64 N. J. L. 340, 346. In seeking
the legislative intent, the presumption is against any mutilation
of a statute, and the courts will resort to elimination only where
an unconstitutional provision is interjected into a statute other-
wise valid, and is so independent and separable that its removal
will leave the constitutional features and purposes of the act
substantially unaffected by the process." The attention of the
court is invited to the proposition in the foregoing extract, to
the effect that in the absence of any express declaration to the
contrary contained in the act itself, the presumption is that the
legislature intended any given enactment to be effective in its
entirety; also to the further declaration that in seeking the leg-
islative intent, the presumption is against any mutilation of
statute, etc. In *State v. Chicago, etc., R. R. Co.,* 195 Mo. 228,
a constitutional amendment had been enacted in respect to the
road system of the state into which was incorporated a local
option law; and in this amendment exceptions had been made

two of these cities, and then the question arose as to the effect as to the three cities of St. Louis, Kansas City and St. Joseph. The court held that the amendment was discriminatory as to on the amendment as a whole.     Concluding an elaborate examination of these questions, the court said: "It cannot, therefore, be said that the amendment would have been passed even if the exception had not been attached to it, and hence it cannot be said that the exception is unconstitutional and that the body of the amendment is a valid law.     The whole amendment must stand or fall together.     It has been demonstrated herein that it cannot stand together.     Moreover, the court cannot declare the exception in reference to the three cities unconstitutional, and declare the remainder of the amendment constitutional, because by so doing the court would make the whole amendment applicable to all parts of the state, including the three cities named, and would thereby make an amendment to the constitution essentially different from that which the people themselves made or attempted to make.     Such is not the province of a court."     In *State v. Montgomery,* 94 Me. 192, a peddler's license statute had been enacted, which provided for the peddling of goods, etc., but which excluded aliens.     The supreme court of Maine held that it was unconstitutional because it did exclude aliens, and having reached that conclusion, the court said: "And although in this case the discrimination was not injurious to the respondent, because he was not an alien, and was not thereby prohibited from obtaining a license, still, for reasons already suggested, we think the hawkers and peddlers' act must be regarded as invalid in toto.     We cannot separate the constitutional part from the unconstitutional.     The distinction between citizens and aliens is fundamental in the scheme for licensing."     Just so, in this case, is the distinction between confederates and all others, fundamental.

In *Connerly v. Union Sewer Pipe Co.,* 184 U. S. 540, the

supreme court of the United States held to be void the Texas anti-trust law, on the ground that the law contained a provision whereby agricultural industries were exempted from its restrictions. So holding this statute to be discriminatory, they further held expressly that the entire statute was avoided, and Mr. Justice Harlan, delivering the opinion of the court, said as follows:

"The principles applicable to such a question are well settled by the adjudications of this court. If different sections of a statute are independent of each other, that which is unconstitutional may be disregarded, and valid sections may stand and be enforced. But if an obnoxious section is of such import that the other sections without it would cause results not contemplated or desired by the legislature, then the entire statute must be inoperative. The first section of the act here in question embraces by its terms all persons, firms, corporations, or associations of persons who combine their capital or skill, or acts for any of the purposes specified, while the ninth section declares that the statute shall not apply to agriculturists or livestock dealers in respect of their products or stock in hand. If the latter section be eliminated as unconstitutional, then the act, if it stands, will apply to agriculturists and live stock dealers. Those classes would in that way be reached and fined, when, evidently, the legislature intended that they should not be regarded as offending against the law even if they did combine their capital, skill, or acts in respect of their products or stock in hand. Looking, then, at all the sections, together, we must hold that the legislature would not have entered upon or continued the policy indicated by the statute unless agriculturists and livestock dealers were excluded from its operation, and thereby protected from prosecution. The result is that the statute must be regarded as an entirety, and in that view must be adjudged to be unconstitutional as denying the equal pro-

tection of the laws to those within its jurisdiction who are not embraced by the ninth section." This decision is binding on this court; *Overton v. Vicksburg,* 70 Miss. 558.

See further, on the general topic, the following cases: *Ames v. People,* 25 Colo. 508; *State v. Harmon,* 23 Ohio Cir. Ct. Rep. 292; *Grey v. City of Dover,* 62 N. J. L. 40; *Weaver v. Davidson Co.,* 124 Tenn. 315; *Black v. Trower,* 79 Va. 123; *Huber v. Martin,* 127 Wis. 412; *State v. Swan,* 7 Wyo. 166.

In *Fant v. Gibbs,* 54 Miss. 396, this court in considering the status of a statute unconstitutional in part, said this: "Such a clause by itself would have been constitutional. * * * The principle is, that where a particular clause of the statute is manifestly based upon certain other clauses, which are pronounced unconstitutional, it will fall with them, though itself not obnoxious to constitutional objections," etc. See, also, *Chicago R. R. C. v. Westby,* 178 Fed. supra, on page 629, where the court giving the indispensable conditions of such a result as that a statute shall stand, notwithstanding a part of it may be unconstitutional, says, amongst other things, that the unconstitutional part "is not so connected with the general scope of the law as to make it impossible, if it is stricken out, to give effect to the apparent intention of the legislature in enacting it;" and, also, that the insertion of words or terms is not necessary to separate the constitutional part from the unconstitutional part, and to give effect to the former only. To the same effect is the opinion delivered by this court in the *Ballard case,* 81 Miss. 507.

Who shall say that the legislature of Mississippi would have enacted the law of 1906 which we are now considering, unless immunity from its exactions had been given to the confederate soldier? It may be that the legislature would have done so; it also may be that the legislature would not. The exemption of the confederate soldier from these impositions has been long a

policy of the state; (see the Act of 1865) in law a mistaken policy, whatever it might be from the point of view of sentiment; but a policy, nevertheless. This consideration is strongly reinforced by the facts that in this very suit, brought by the state through its revenue agent, the demurrers presenting the unconstitutionality of such exemptions, and insisting on the same, were filed March 7th, 1910, and more than a month afterwards, on April 14th, the existing statute was reenacted, with the same identical provisions.

Argued orally by *W. H. Potter,* for appellant, and by *Edward Mayes,* for appellee.

ANDERSON, J., after stating the facts as above, delivered the opinion of the court.

The privilege tax statutes in force, covering the period from 1906 to 1909, inclusive, contain the following exemptions, which are found in sections 3849 and 3895, Code 1906: Section 3849, after imposing taxes on peddlers of merchandise varying in amount, according to the kind of team and vehicle used, concludes with: "Provided, that any person resident of any county in this state who is over sixty years old and has lost a limb or an eye, or who is otherwise unable to earn a support for himself by labor, and whose taxable property is less than $500.00, may peddle in the county of his residence without paying a privilege tax." And section 3895 is as follows: "Any confederate soldier may exercise any of the following privileges in the county of his residence without the payment of the privilege tax: Auctioneer, barber, bicycle dealer, contractor, cotton weigher, magic lantern, feed stable, livery stable, lunch stand, restaurant, insurance agent, or merchant (where the stock of goods never exceeds one thousand dollars), peddler, soda fountain, or wood yard. (b) Any person blind, deaf and dumb, or maimed by loss of hand or foot, or any confederate soldier or

the wife or widow of any confederate soldier, may exercise any of the privileges herein enumerated, except that of dealing in liquor, cigarettes, deadly weapons, secondhand clothing, or jenny lind or pool table, or like contrivances kept for amusement, without the payment of the tax thereon, if he exercise the privilege exclusively for himself and family, provided he resides in this state and does not own taxable property in excess of one thousand dollars, either in his name or his wife's name." And covering the period from 1904 to 1906, inclusive, the proviso to section 3849, Code 1906, above quoted, was in force, having been brought forward from previous acts into the Code of 1906; and for the period from 1903 to 1906, inclusive, up to the time the privilege tax chapter of the Code of 1906 went into effect, the proviso in the privilege tax statute of 1894 (chapter 29, p. 24) was in force, which was as follows: "Any confederate soldier who has lost a foot, hand or eye, or who is otherwise infirm, may exercise any of the privileges herein enumerated, except that of dealing in liquors, cigarettes or deadly weapons, or keeping billiard, jenny lind or pool tables, ten-pin alleys or like contrivances kept for amusement, without the payment of a tax thereon, if he exercise the privilege exclusively for himself and family and in the county of his residence."

It is argued on behalf of appellee that the provisos in the statute of 1894 (chapter 29, p. 24) and section 3895, Code 1906, make an arbitrary, unreasonable, and discriminatory classification of confederate soldiers, and that section 3849, Code 1906 (chapter 76, p. 73, Acts 1904), also makes such a classification of persons over 60 years of age who have lost a limb or an eye, "whose taxable property is less than $500," and are therefore violative of the equal protection clause of the fourteenth amendment of the constitution of the United States, which provides that no state shall deny "to any person within its jurisdiction the equal protection of the laws." The appellee

is a "person," within the meaning of this clause.    A corporation
doing business within a state, other than that of its creation,
having an office and agents therein, and subject to the process
of the courts of such state, is a "person," within the meaning
of the equal protection clause of the fourteenth amendment.
4 Ency. U. S. Sup. Ct. Rep. pp 352, 353, 354; *Southern Ry.
Co. v. Greene,* 216 U. S. 400, 30 Sup. Ct. 287.

What are the limits of the power of classification by the states
under this constitutional provision?   It is undoubted that the
power of the states to make classification of persons and property
for the purposes of taxation, as well as for other purposes, is
broad; but it is equally true that the mere fact of classification
is not sufficient to relieve a statute from the operation of the
equality clause.    The classification must be based on some reas-
onable ground, and some real difference which bears a just and
proper relation to the object sought to be accomplished.    "Mere
arbitrary selection can never be justified by calling it classifica-
tion," and discriminations against persons and classes of an
unusual character are obnoxious to the constitution.    4 Encyc.
U. S. Sup. Ct. Rep. 362, 363.

In *Chicago & St. Paul Ry. Co. v. Westby,* 178 Fed. 619, 102
C. C. A. 65, the circuit court of appeals, through Judge Sanborn
said: "In the face of the constitutional prohibition of unequal
laws, there are three indispensable conditions to a constitutional
imposition of liabilities or burdens upon, or a constitutional
grant of rights or privileges to, the members of one class that
other members of the state do not bear or enjoy: (1) There must
be such a difference between the situation and circumstances of
all the members of the class and the situation and circumstances
of other members of the state in relation to the subjects of the
discriminatory legislation as presents a just and natural reason
of necessity or propriety for the difference made by the law in
their liabilities and rights.    While reasonable classification is

permitted, without doing violence to the equal protection of the laws, such classification must be based upon some real and substantial distinction, bearing a reasonable and just relation to the things in respect to which such classification is imposed; and classification cannot be arbitrarily made without any substantial basis.    Arbitrary selection, it has been said, cannot be justified by calling it classification."

And the United States supreme court, in *Southern Ry. v. Greene,* 216 U. S. 400, 30 Sup. Ct. 287, said: "The equal protection of the laws means subjection to equal laws, applying alike to all in the same situation.    If the plaintiff is a person within the jurisdiction of the state of Alabama within the meaning of the fourteenth amendment, it is entitled to stand before the law upon equal terms, to enjoy the same rights as belong to, and to bear the same burdens as are imposed upon, other persons in a like situation."

And this court, in *Ballard v. Oil Co.,* 81 Miss. 507, 34 South. 533, 62 L. R. A. 407, 95 Am. St. Rep. 476, said: "Multiplied citations from the United States supreme court could be made, but the thought running through them all, as we understand them, clearly is that the classification is not to be made, except upon the basis of some difference between the business of those favored and the business of those not favored—a substantial difference warranting the classification."

A statute of Vermont exempted from the peddlers' license tax all persons resident in that state "who served as soldiers in the war for the suppression of the rebellion in the Southern states, and were honorably discharged."    The supreme court of that state held, in *State v. Shedroi,* 75 Vt. 277, 54 Atl. 1081, 63 L. R. A. 179, 98 Am. St. Rep. 825, the statute to be class legislation, and violative of the equal protection clause of the constitution, because it discriminated against others than such soldiers engaged in peddling.    The court said: "Upon what

basis does the attempted classification rest? There is no basis upon which it can rest, except that persons in the one class served as soldiers in the civil war and were honorably discharged, and those of the other class did not so serve or were not honorably discharged. This classification is dependent solely on a condition of things long since past, and not on a present situation or condition, nor on a substantial distinction having reference to the subject-matter of the law enacted. The veterans were originally from no particular class, and when discharged from the army they returned to no particular class. They again became a part of the general mass of mankind, with the same constitutional rights, privileges, immunities, burdens, and responsibilities as other citizens similarly circumstanced in law, in the same jurisdiction. Assuming that thus to have served as a soldier and to have received an honorable discharge may well merit reasonable considerations at the hands of the state, in recognition of patriotism and valor in defense of a common country, yet such considerations cannot exceed those constitutional limits established for the welfare and protection of the whole; for equal protection of the laws requires 'that all persons subjected to such legislation shall be treated alike under like circumstances and conditions, both in the privileges conferred and liabilities imposed." *Magoun v. Bank,* above cited [170 U. S. 283, 18 Sup. Ct. 594, 42 L. Ed. 1037]. It cannot be said that service as a soldier in the civil war and the receipt of an honorable discharge bear any relation to the business of a peddler as defined by the law under consideration. There is no difference between the present conditions and circumstances of such veterans and those of other citizens regarding the relations to the law or the attempted classification. In fact, according to their relations, they are of the same class, and any attempted classification between them is but a mere arbitrary selection, and based upon no reasonable grounds. * * *

We think it clear that the discrimination made in the law in question, in favor of persons who served in the war of the rebellion and were honorably discharged, is without reasonable ground and arbitrary, having no possible connection with the duties of the citizens as taxpayers, and their exemption from the payment of the tax therein required of others exercising the same calling is pure favoritism, and a denial of the equal protection of the laws."

And the Supreme Court of Iowa, in *State v. Garbroski,* 111 Iowa, 496, 82 N. W. 959, 56 L. R. A. 570, 82 Am. St. Rep. 524, passing on a similar statute to that of Vermont, said: "The classification here attempted rests solely on a past and completed transaction, having no relation to the particular legislation enacted. All citizens are divided into two classes— those who served in the army and navy thirty-five years ago, and all those who did not. True, as suggested, the veterans came from no particular class; but the trouble with this statute is that it attempts to make of them a class in legislation, in the operation of which there can be no substantial distinction between them and others. In present conditions and circumstances, there are no differences between them, in their relation to society and the administration of the law, and other citizens of the state. Possibly a veteran soldier or sailor would be preferred, everything else being equal, for civil office, because of superior fitness, resulting from discipline of service in war; for 'it is distinctly a public purpose to promote patriotism and to make conspicuous and honorable any exhibition of courage, constancy, and devotion to the welfare of the state.' But the work of a peddler calls for no qualities such as a soldier or sailor acquires in the service. Equality in right, privilege, burdens, and protection is the thought running through the Constitution and laws of the state; and an act intentionally and necessarily creating inequality therein, based on no reason sug-

gested by necessity or difference in condition or circumstances, is opposed to the spirit of free government, and expressly prohibited by the Constitution. If the ultimate object of this section was, as suggested, to prevent the separation of society into classes or castes such as exist in other lands, it may not be amiss to observe that these, in large part, had their origin in the honors and emoluments bestowed because of achievements in arms and military service. * * * The classification attempted by this statute is based on no apparent necessity, or difference in conditions or circumstances that have any relation whatever to the employment in which the veteran of the civil war is authorized to engage without paying license. It savors more of philanthropy (worthy of the highest commendation, in its proper sphere) than of reasonable discrimination, based on real or apparent fitness for the work to be done."

A statute of New York required civil service examinations of all applicants for certain official positions, except union soldiers, who were exempt; and the Court of Appeals of that state, in *In re Keymer,* 148 N. Y. 219, 42 N. E. 667, 35 L. R. A. 447, holding the statute unconstitutional, said: "In the first place, this act refers only to veterans of the civil war, and creates a favored class. A veteran who seeks a place in the civil service where compensation does not exceed $4 per day is exempted from competitive examination, while every other citizen must submit to it. This is contrary to the letter and spirit of the constitution, and renders the act void." And a similar statute of Massachusetts was held to be unconstitutional in *Brown v. Russell,* 166 Mass. 14, 43 N. E. 1005, 32 L. R. A. 253, 55 Am. St. Rep. 357.

Applying these principles to the statutes under consideration, and what is the result? The evident purpose of the act of 1904, brought forward into section 3849, was to make a class of, and exempt from the peddler's tax, the aged who were

physically disabled and impecunious. This purpose, however, cannot be effectuated if the word "taxable" in the statute is to be given its usual significance; for, so construing it, a person coming within the terms of the statute would be entitled to the exemption, even though he owned any amount whatever of non-taxable property, for instance, $100,000 of state bonds, which are tax free; while, on the other hand, another person, within its terms as to age and physical disability, but owning slightly over $500 of "taxable" property—his all—would be subject to the tax, which would be an absurdity, amounting to a subversion of the plain purpose of the statute. By the use of the term "taxable property" the legislature may have had in mind the assessment rolls, as fixing values for the sheriffs, in determining whether applicants come within the exemption. However that may be, it renders the statute ambiguous, and the rules for the construction of such statutes apply, which are: That when a literal interpretation will lead to an absurdity, and prevent the real intent and object of the statute from being accomplished, then resort must be had to the principle that the spirit of the law controls the letter, and "that which is within the intention of the statute is as much within the statute as if it were within the letter, and a thing which is within the letter of the statute is not within the statute, unless it be within the intention." *Ott v. Lowery,* 78 Miss. 487, 29 South. 520; *State v. M. & O. R. R. Co.,* 72 Miss. 236, 16 South. 489; 26 Am. & Eng. Ency. of Law (2nd ed.) 602. So construing this statute, the word "taxable" is meaningless, and is to be disregarded; and we have, then, a classification of the aged, who are physically disabled and impecunious, which classification is based on existing conditions, and founded in reason and justice, and not violative of the constitution. On the other hand, the exemption in Acts 1894, p. 24, c. 29, and section 3895, Code 1906, make a class of confederate soldiers, under

conditions named, and exempts them from the tax; while all other persons, under exactly the same conditions, but who were not confederate soldiers, must pay the tax—the distinction alone being that the exempt class were confederate soldiers, which under the authorities is a classification clearly repugnant to the equal protection clause of the constitution, and therefore void.

It is contended, however, for the appellant, that if these void exemptions are stricken from the privilege tax statutes there is left a complete and consistent scheme of raising revenue through privilege taxes; that the void provisions are separable from the others; and the legislature would have passed the latter, even though it had known the former would be void. In treating this question, Judge Cooley, in his work on Constitutional Limitations (7th ed.), pp. 246, 247, 248, says: "Where, there-·fore, a part of a statute is unconstitutional, that fact does not authorize the courts to declare the remainder void also, unless all the provisions are connected in subject-matter, depending on each other, operating together for the same purpose, or otherwise so connected together in meaning that it cannot be presumed the legislature would have passed the one without the other. The constitutional and unconstitutional provisions may even be contained in the same section, and yet be perfectly distinct and separable, so that the first may stand, though the last fall. The point is not whether they are contained in the same section, for the distribution into sections is purely artificial, but whether they are essentially and inseparably connected in substance. If, when the unconstitutional portion is stricken out, that which remains is complete in itself, and capable of being executed in accordance with the apparent legislative intent, wholly independent of that which was rejected, it must be sustained. The difficulty is in determining whether the good

and bad parts of the statute are capable of being separated within the meaning of this rule. If a statute attempts to accomplish two or more objects, and is void as to one, it may still be in every respect complete and valid as to the other." To the same effect are *Field v. Clark,* 143 U. S. 649, 12 Sup. Ct. 495, 36 L. Ed. 294; *Allen v. Louisiana,* 103 U. S. 80, 26 L. Ed. 318; *Ballard v. Oil Co.,* 81 Miss. 507, 34 South. 533, 62 L. R. A. 407, 95 Am. St. Rep. 476. In *Field v. Clark, supra,* the supreme court of the United States, answering the contention that the whole tariff act of 1890 was void, because of the unconstitutionality of the provision giving a bounty to sugar producers, said: "Unless it be impossible to avoid it, a general revenue statute should never be declared inoperative in all its parts because a particular part relating to a distinct subject may be invalid. A different rule might be disastrous to the financial operations of the government, and produce the utmost confusion in the business of the entire country."

Are the void provisions and the others interdependent? Would the legislature have passed the latter without the former? In determining the question, it is proper to consider, in connection with the structure of the statutes, their purpose, and the policy of the state in their enactment, what proportion of the state's revenues are raised in this manner, etc.; and to this end the court will take judicial notice of co-ordinate branches of the state government, and of the records thereof, and their contents, as may be done under the law. 16 Cyc. 870; 17 Am. & Eng. Ency. of Law (2nd ed.), 915. From these records it is ascertained that for more than forty years a very large proportion of the revenues of the state have been derived from privilege taxes. To illustrate: For the period from 1899 to 1909, inclusive, the comparative amounts derived from privilege and ad valorem taxes, as shown by the records in the auditor's office, are as follows:

| Tax Year. | Ad Valorem Tax. | Privilege Tax. |
|---|---|---|
| 1899 | $1,124,059 73 | $403,383 83 |
| 1900 | 1,215,680 32 | 439,014 03 |
| 1901 | 1,267,656 46 | 402,027 30 |
| 1902 | 1,373,968 35 | 391,610 74 |
| 1903 | 1,440,266 68 | 450,653 30 |
| 1904 | 1,555,948 58 | 564,606 95 |
| 1905 | 1,636,173 53 | 552,676 31 |
| 1906 | 2,095,004 25 | 569,511 30 |
| 1907 | 2,138,551 93 | 567,135 32 |
| 1908 | 2,190,748 72 | 480,794 21 |
| 1909 | 2,257,789 27 | 479,542 84 |

The privilege tax chapter of the Code of 1906 contains about 120 sections, and the section in question is disconnected from the others, having a separate number. It is not probable that the legislature would have abandoned this scheme of raising revenue, so thoroughly established as the policy of the state, and from which such a large proportion of its revenues are derived, had it known the confederate soldier could not be exempt from its operation, under the conditions named in the statutes in question.

*Connolly v. Union Sewer Pipe Co.*, 184 U. S. 540, 22 Sup. Ct. 431, 46 L. Ed. 679, relied on by appellee, is not controlling in this case. In that case the entire Illinois anti-trust statute was held unconstitutional, because agriculturists and live stock dealers were exempt from its operation. It can be very well understood why the legislature would have refused to pass any law at all on the subject, had it known this large class could not be exempt. The confederate soldiers are a very small portion of the population of this state. Our judgment is, from a consideration of the privilege tax statutes themselves, in connection with the long-established policy of the state of raising such a large proportion of its revenues in this manner, that the un-

constitutional provisions of such laws may be stricken out, and there is left a complete and consistent scheme, which the legislature would have passed alone, the terms of which include confederate soldiers, and make them liable for the peddler's tax, along with the Standard Oil Company, and all others engaged in the business.

*Reversed and remanded.*