# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 97-CA-00121-SCT

*H. J. WILSON COMPANY, INC.*

*v.*

*STATE TAX COMMISSION OF THE STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 12/23/96 |
| TRIAL JUDGE: | HON. DENISE OWENS |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | CHARLES L. BROCATO |
| | CHARLES A. TROST |
| ATTORNEYS FOR APPELLEE: | BRAD D. WILKINSON |
| | BOBBY R. LONG |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| DISPOSITION: | AFFIRMED IN PART; REVERSED AND REMANDED IN PART. - 7/30/98 |
| MOTION FOR REHEARING FILED: | 8/13/98 |
| MANDATE ISSUED: | 4/20/99 |

**BEFORE PRATHER, C.J., SMITH AND WALLER, JJ.**

**SMITH, JUSTICE, FOR THE COURT:**

¶1. H. J. Wilson Company, doing business as Service Merchandise in the State of Mississippi (hereinafter Service Merchandise), challenged use tax assessments by the Mississippi State Tax Commission (hereinafter Commission) during the taxable periods from June 1, 1986 through June 30, 1992, inclusive. The Commission, relying on Miss. Code Ann. § 27-67-5, denied Service Merchandise all relief requested, and Service Merchandise paid the assessment levied. Service Merchandise, having exhausted all of its administrative remedies, filed a complaint in the Hinds County Chancery Court seeking a refund of the use tax assessments.

¶2. Service Merchandise argued that the use tax assessment violated the First Amendment of the United States Constitution; constituted an unlawful burden on interstate commerce in violation of the Commerce Clause; violated the due process clause of the Fourteenth Amendment; and discriminated against Service Merchandise in violation of the Equal Protection Clause. Service Merchandise additionally challenged whether the appropriate tax base for purposes of the use tax be the gross cost

of publication or the net cost of publication of the respective catalogs, fliers, and inserts. The chancery court, Honorable Denise Owens presiding, entered final judgment denying the refund of use taxes on December 23, 1996.

¶3. Service Merchandise now appeals to this Court the chancery court's denial of relief and contends that the chancery court erred by concluding that the Commission's examination of periodicals did not constitute a content-based inquiry and, thus, was not violative of the First Amendment; by not requiring the Commission to put forward a compelling justification for its content-based distinction between Service Merchandise's publications and non-taxed newspapers; by not rejecting the Commission's justification to satisfy commercial speech scrutiny; and by taking the unprecedented view that Mississippi could lawfully impose a tax on Service Merchandise's United States postage costs. The Commission contends that the chancery court did not err in finding the Commission's basis for determining whether a publication should be afforded exemption from use tax as a newspaper was content-neutral; even if content-based, Mississippi's use tax scheme survives constitutional scrutiny under a commercial speech analysis; and postage fees were appropriately included in Service Merchandise's tax base.

## FACTS

¶4. H. J. Wilson Company, the Appellant, was doing business in the State of Mississippi as Service Merchandise (hereinafter Service Merchandise) and is a subsidiary of Service Merchandise Co., Inc. (hereinafter Service Merchandise Company), a Tennessee corporation with its principal place of business and commercial domicile located in Tennessee. Service Merchandise operates in the State of Mississippi as a retail store carrying an extensive line of jewelry and household appliances. Service Merchandise has no advertising department and depends on Service Merchandise Company to obtain advertising for its Mississippi operations.

¶5. Service Merchandise Company has for many years contracted with printers to produce an extensive array of catalogs and fliers which it has mailed to its Mississippi customers. During the audit period in question, these catalogs and fliers were used extensively to provide potential customers with prices and descriptions of Service Merchandise's extensive array of products and to notify customers of upcoming sales, discounts and special programs. In order to reach those customers most likely to benefit from receiving Service Merchandise information, Service Merchandise Company carefully compiled lists of Mississippi residents based on the following four criteria: (1) lists compiled of customers based on records of prior purchasers; (2) lists purchased from outside vendors of customer lists; (3) lists rented from outside vendors of customer lists; and (4) customer requests. During the audit period, Service Merchandise Company mailed publications to Service Merchandise customers between twenty-two and twenty-eight times per year.

¶6. Service Merchandise Company contracts with printers to produce publications to be sent to Mississippi and other states in which its subsidiaries operate stores. During the audit period, the catalogs sent into Mississippi were all prepared and printed outside Mississippi. Once printed, the publications at issue were placed in the United States Mail at post offices located outside Mississippi and then forwarded directly to Mississippi residents by the United States Postal Service.

¶7. In 1992, the Mississippi State Tax Commission (hereinafter the Commission) assessed a use tax of six percent (6%)[1] against Service Merchandise for the cost of the publications printed and mailed

to the residents of Mississippi. In assessing what it claimed to be Service Merchandise's use tax liability, the Commission conducted two audits. During the first audit, the Commission issued an assessment for Service Merchandise Company's publications which, together with lawful interest on the amount assessed through the date Service Merchandise made payment, totaled $263,580.96. In making this assessment, the Commission excluded the cost of mailing the Service Merchandise publications to Mississippi. However, in its second assessment, which totaled $394,569.27 including interest, the Commission included use tax on United States Postal charges totaling $100,965.00 plus interest in the amount of $44,455.00.

¶8. Service Merchandise challenged the applicability of the Commission's use tax assessment and further protested the assessment charges incident to the application of the use tax to postage paid, but the Commission denied all relief requested. As a result, Service Merchandise paid the full tax assessment in the amount of $658,150.23 on February 14, 1992 and June 25, 1993. Upon stipulation of both parties, the proper taxpayer in this controversy is Service Merchandise.

¶9. Service Merchandise next filed a complaint in the Chancery Court of the First Judicial District of Hinds County, Mississippi on July 2, 1992 alleging the following:

> The Sales and Use Tax scheme of Mississippi relative to exemptions for newspapers, television and radio advertising, religious publications, and certain aspects of intrastate printing industries set forth in Rule 51 of the Mississippi Sales and Use Tax Rules results in unlawful, discriminatory taxation against this taxpayer in violation of taxpayers' rights under the First Amendment of the United States Constitution.

At the core of Service Merchandise's contentions before the chancery court was its contentions that the Commission's Sales and Use Tax Rule 51, providing for an exemption to newspapers, was an unconstitutional content-based discrimination in violation of the First Amendment of the United States Constitution and that the Commission was without authority to impose the portion of the use tax assessment pertaining to postage costs applied in the second audit period.

¶10. The chancery court, Honorable Denise Owens presiding, entered final judgment finding Service Merchandise's claim for refund of use tax and interest was without merit and, therefore, should be dismissed. The chancery court first held that the Commission's computation of use tax on the inclusion of postage during the second audit was within the statutory authority of the Mississippi Use Tax Law. The chancery court next decided that the appropriate tax base for the use tax assessment was the gross cost of publication and not the net cost for Service Merchandise. The chancery court finally determined that the exemption afforded newspapers under the sales and use tax scheme was not content-based discrimination and, thus, not in violation of the First Amendment of the United States Constitution.

¶11. It is from this decision that Service Merchandise appeals to this Court and raises the following issues:

> **I. WHETHER THE TRIAL COURT ERRED BY HOLDING THAT THE COMMISSION'S EXAMINATION OF PERIODICALS DID NOT CONSTITUTE A CONTENT-BASED INQUIRY AND THUS NOT VIOLATIVE OF THE FIRST AMENDMENT OF THE UNITED STATES CONSTITUTION.**

**II. WHETHER THE TRIAL COURT ERRED BY NOT REQUIRING THE COMMISSION TO PUT FORWARD A COMPELLING JUSTIFICATION FOR ITS CONTENT-BASED DISTINCTION BETWEEN SERVICE MERCHANDISE'S PUBLICATIONS AND NON-TAXED NEWSPAPERS.**

**III. WHETHER THE TRIAL COURT ERRED BY NOT REJECTING THE COMMISSION'S JUSTIFICATION OF A LESSER PROTECTION FOR COMMERCIAL SPEECH AS CONSTITUTIONALLY INADEQUATE.**

**IV. WHETHER THE APPLICABLE REMEDY UNDER MISSISSIPPI LAW FOR OVERPAYMENT OF USE TAX UNDER AN UNCONSTITUTIONAL TAX SCHEME REQUIRES THE REFUND OF ALL PAYMENTS MADE BY SERVICE MERCHANDISE.**

**V. WHETHER THE TRIAL COURT ERRED BY NOT REJECTING THE USE TAX IMPOSED ON SERVICE MERCHANDISE'S POSTAGE IN LIGHT OF THE FACT THAT A SIMILAR SALES TAX WOULD NEVER BE IMPOSED ON THE SAME PRODUCT.**

**VI. WHETHER THE TRIAL COURT ERRED BY TAKING THE VIEW THAT MISSISSIPPI COULD LAWFULLY IMPOSE A USE TAX ON SERVICE MERCHANDISE'S UNITED STATES POSTAGE COSTS.**

### DISCUSSION OF LAW

**I. WHETHER THE TRIAL COURT ERRED BY HOLDING THAT THE COMMISSION'S EXAMINATION OF PERIODICALS DID NOT CONSTITUTE A CONTENT-BASED INQUIRY AND THUS NOT VIOLATIVE OF THE FIRST AMENDMENT OF THE UNITED STATES CONSTITUTION.**

¶12. The instant case involves the imposition of a use tax on Service Merchandise's importation of certain tangible personal property, i.e., various advertising fliers and sales catalogs, into the State of Mississippi. The use tax in question was imposed by the Commission under the following statutory authority:

> There is hereby levied, assessed and shall be collected from every person a tax for the privilege of using, storing or consuming, within this state, any tangible personal property possession of which is acquired in any manner.
>
> (a) The use tax hereby imposed and levied shall be collected at the same rates as imposed under Section 27-65-24, and Sections 27-65-17, 27-65-18, 27-65-19 and 27-65-25 computed on the purchase or sales price, or value, as defined in this article.

Miss. Code Ann. § 27-67-5(a) (Supp.1997). Miss. Code Ann. § 27-67-3 provides the following definitions for purposes of imposing the Mississippi use tax:

> (i) "Tangible personal property" means personal property perceptible to the human senses or by

chemical analysis, as opposed to real property or intangibles. "Tangible personal property" shall include printed, mimeographed, multigraphed matter, or material reproduced in any other manner, and books, catalogs, manuals, publications or similar documents covering the services of collecting, compiling or analyzing information of any kind or nature. However, reports representing the work of persons such as lawyers, accountants, engineers and similar professionals shall not be included. *"Tangible personal property" shall also include tangible advertising or sales promotion materials such as, but not limited to, displays, brochures, signs, catalogs, price lists, point of sale advertising materials and technical manuals.* Tangible personal property shall also include computer software programs.

. . . .

(k) "Use" or "consumption" means the first use or intended use within this state of tangible personal property and shall include rental or loan by owners or use by lessees or other persons receiving benefits from use of the property. *"Use" or "consumption" shall include the benefit realized or to be realized by persons importing or causing to be imported into this state tangible advertising or sales promotion materials.*

Miss. Code Ann. § 27-67-3(i), (k) (1990) (emphasis added). Furthermore, Miss. Code Ann. § 27-67-7 provides an exemption from imposition of the use tax on the use of certain tangible personal property as follows:

The tax levied by this article shall not be collected in the following instances:

. . . .

(b) On the use, storage or consumption of tangible personal property to the extent that sales of similar property in Mississippi are either excluded or specifically exempt from sales tax or are taxed at the wholesale rate.

Miss. Code Ann. § 27-67-7(b) (Supp. 1997). Miss. Code Ann. § 27-65-111(b) provides the following sales tax exemption to newspapers:

The tax levied by this chapter shall not apply to the following:

. . . .

(b) Sales of daily or weekly newspapers, and periodicals or publications of scientific, literary or educational organizations exempt from federal income taxation under Section 501(c)(3) of the Internal Revenue Code of 1954, as it exists as of March 31, 1975, and subscriptions sales of all magazines.

Miss. Code Ann. § 27-65-111(b) (Supp. 1997). Thus, since newspapers are afforded an exemption from imposition of the Mississippi sales tax, they subsequently are afforded an exemption from imposition of the Mississippi use tax under the above statutory authority which leads us to the current controversy before this Court, i.e., whether the Commission's criteria used for determining whether a publication qualifies for newspaper status and thus an exemption amounts to content-based discrimination in violation of the First Amendment of the United States Constitution.

¶13. Service Merchandise contends that the Commission relies on content-based criteria to make the determination of whether a publication qualifies for the sales and use tax exemption afforded to newspapers in violation of the First Amendment of the United States Constitution. In support of this contention, Service Merchandise relies on the Commission's response to one of its requests for admission which stated as follows:

> *Request for Admission No. 12: Do you admit or deny the determination of whether a weekly or daily periodical or publication is or is not a newspaper requires examination of the content of the periodical or publication?*

> **Response to Request for Admission No. 12:** Admit. The MSTC admits that MCA § 13-3-31 sets out certain content related criteria in subsection (g). The MSTC denies any other or further examination of content is required.

The Commission, however, contends that the determination of whether a publication is a newspaper is made exclusive of any content-based criteria and that one need not read the message and expression of ideas in order to determine whether a publication is a newspaper.

¶14. When the use tax assessments were assessed against Service Merchandise, the Commission[2] determined whether a publication was a newspaper for sales and use tax purposes based on the criteria set forth in Miss. Code Ann. § 13-3-31 (Supp. 1997). Miss. Code Ann. § 13-3-31(1) provides the following definition of a newspaper, for purposes of publication of legal notice but adopted by the Commission for sales and use tax purposes, as a publication which:

> (a) Maintains a general circulation predominantly to bona fide paying subscribers within the political subdivision within which publication of such legal notice is required. The term "general circulation" means numerically substantial, geographically widespread, demographically diversified circulation to bona fide paying subscribers. In no event shall the term "general circulation" be interpreted to require that legal notices be published in a newspaper having the greatest circulation. The term "bona fide paying subscribers" means persons who have subscribed at a subscription rate which is not nominal, whether by mail subscriptions, purchases through dealers and carriers, street vendors and counter sellers, or any combination thereof, but shall not include free circulation, sales at a token or nominal subscription price and sales in bulk for purposes other than for resale for individual subscribers.

> (b) Maintains a legitimate list of its bona fide paying subscribers by the following categories where applicable:

> (i) Mail subscribers;

> (ii) Dealers and carriers; and

> (iii) Street vendors and counter sellers.

> (c) Is not published primarily for advertising purposes and has not contained more than seventy-five percent (75%) advertising in more than one-half (1/2) of its issues during the period of twelve (12) months next prior to the first publication of any legal notice therein, excluding separate advertising supplements inserted into but separately identifiable from any regular issue

or issues.

(d) Has been established and published continuously for at least twelve (12) months next prior to the first publication of such matter to be published, is regularly issued at stated intervals no less frequently than once a week, bears a date of issue, and is numbered consecutively; provided, however, that publication on legal holidays of this state or of the United States and on Saturdays and Sundays shall not be required, and failure to publish not more than two (2) regular issues in any calendar year shall not disqualify a paper otherwise qualified.

(e) Is issued from a known office of publication, which shall be the principal public business office of the newspaper and need not be the place at which the newspaper's printing presses are physically located. A newspaper shall be deemed to be "published" at the place where its known office of publication is located.

(f) Is formed of printed sheets. However, the word "printed" does not include reproduction by the stencil, mimeograph or hectograph process.

(g) *Is originated and published for the dissemination of current news and intelligence of varied, broad and general public interest, announcements and notices, opinions as editorials on a regular or irregular basis, and advertising and miscellaneous reading matter.*

(h) Is not designed primarily for free circulation or for circulation at nominal rates.

Miss. Code Ann. § 13-3-31(1) (Supp. 1997) (emphasis added). The Mississippi legislature has since then adopted a similar criteria for purposes of determining whether a publication qualifies for an exemption from sales and use tax based on its classification as a newspaper.[3]

¶15. Many state jurisdictions provide an exemption for newspapers from imposition of sales and use tax under the applicable state statutes, and several states have determined their respective sales and use tax schemes unconstitutional as being in violation of the First Amendment of the United States Constitution because of the application of content-based criteria to determine whether publications qualified as a newspaper for exemption from imposition of sales and use tax. *See, e.g.*, **Department of Revenue v. Magazine Publishers of Am., Inc.**, 604 So. 2d 459, 463 (Fla. 1992) (holding Florida sales tax scheme for publications unconstitutional under the First Amendment as content-based and not narrowly drawn to achieve a compelling governmental interest); **Emmis Publ'g Corp. v. Indiana Dep't of State Revenue**, 612 N.E.2d 614, 622 (Ind. Tax Ct. 1993) (holding Indiana sales tax scheme granting exemption to newspapers unconstitutional as being content-based and "neither necessary to serve a compelling state interest nor narrowly drawn to achieve that end"); **Southern Living, Inc. v. Celauro**, 789 S.W.2d 251, 253 (Tenn. 1990) (ruling unconstitutional Tennessee's Sales and Use Tax scheme allowing exemption for newspapers as content-based and failing to meet the heightened scrutiny of narrowly drawn to achieve a compelling government interest); **Newsweek, Inc. v. Celauro**, 789 S.W.2d 247, 250 (Tenn. 1990) (same). *But see* **Gallacher v. Commissioner of Revenue Servs.**, 602 A.2d 996, 1005 (Conn. 1992) (holding that Connecticut tax scheme of "exempting newspapers from the generally applicable use tax while not exempting other media does not violate the first amendment"); **Hearst Corp. v. Iowa Dep't of Revenue & Fin.**, 461 N.W.2d 295, 304 (Iowa 1990) (holding that "Iowa tax scheme which exempts 'newspapers,' but not 'magazines' or 'periodicals,' from the generally-applicable Iowa retail sales and use tax is not the type of suspect tax

that violates the first amendment"); *Magazine Publishers of Am. v. Commonwealth Dep't of Revenue*, 654 A.2d 519, 523 (Pa. 1995) (ruling that the Pennsylvania tax scheme "distinction between newspapers and magazines, as set forth in the newspaper exemption and the provisions that relate to it, is based on the format and frequency of publication, not the content" and thus not unconstitutional).

¶16. In *Newsweek, Inc. v. Celauro* and *Southern Living, Inc. v. Celauro*, two companion cases decided by the Tennessee Supreme Court on March 5, 1990, the Tennessee Supreme Court held that the Tennessee Sales and Use Tax Statutes' exemption for newspapers from imposition of the sales and use tax was unconstitutionally content-based discrimination. *Newsweek, Inc.*, 789 S.W.2d at 249; *Southern Living, Inc.*, 789 S.W.2d at 252. The supreme court held that the Tennessee Sales and Use Tax scheme's use of criteria that "a publication 'must contain matters of general interest and reports of current events'" in order to qualify for the newspaper exemption was "not a content-neutral requirement," and the tax scheme was thus invalid, for it was not narrowly drawn to achieve a compelling state interest. *Newsweek, Inc.*, 789 S.W.2d at 249. In reaching this conclusion, the supreme court relied heavily on the United States Supreme Court's decision in *[Arkansas Writers' Project, Inc. v. Ragland](#)*, 481 U.S. 221 (1987), for the rule of law that

> [S]elective taxation of the press--either singling out the press as a whole or targeting individual members of the press--poses a particular danger of abuse by the State. 'A power to tax differentially, as opposed to a power to tax generally, gives a government a powerful weapon against the taxpayer selected.* When the State imposes a generally applicable tax, there is little cause for concern. We need not fear that a government will destroy a selected group of tax payers by burdensome taxation if it must impose the same burden on the rest of its constituency.'

*Id.* at 249-50 (emphasis added) (quoting *[Arkansas Writers' Project, Inc. v. Ragland](#)*, 481 U.S. 221, 228 (1987) (quoting *[Minneapolis Star & Tribune Co. v. Minnesota Comm'r of Revenue](#)*, 460 U.S. 575, 585 (1983))). The supreme court concluded that

> The tax that singles out the press, or that targets individual publications within the press, places a heavy burden on the State to justify its action. *[Minneapolis Star](#)*, [460 U.S. at 592-93]. In this case the State has failed to meet this heavy burden. It has advanced no compelling justification for selective, content based taxation of plaintiff's publication. We hold therefore the tax is invalid under the First Amendment.

*Newsweek, Inc.*, 789 S.W.2d at 250.

¶17. In *Department of Revenue v. Magazine Publishers of America, Inc.*, the Florida Supreme Court similarly invalidated the Florida use tax scheme providing an exemption for newspapers as being content-based discrimination and in violation of the First Amendment of the United States Constitution. *Department of Revenue v. Magazine Publishers of Am., Inc.*, 604 So. 2d 459, 463 (Fla. 1992). The tax scheme at issue in *Magazine Publishers of America, Inc.* was "a tax of general applicability, which applie[d] to receipts from the sales of all tangible personal property unless specifically exempted, and [did] not single out the press for special treatment," and thus, the tax scheme did "not discriminate either by singling out the press for a special tax or by targeting a small group within the press to bear the burden of the tax." *Magazine Publishers of Am., Inc.*, 604 So. 2d

at 461. However, the Florida Supreme Court found that the tax scheme was unconstitutional because it determined whether a publication was a newspaper on content-based criteria. *Id.*

¶18. The Florida sales tax scheme for determining whether a publication qualified for the newspaper exemption included five different elements in which the court found that four of the elements related to the "form and frequency of publication." *Id.* at 462. However, the fifth element[4] required "the Department [of Revenue] to evaluate the contents of the publication to determine whether it contain[ed] 'reports of current events and matters of general interest which appeal to a wide spectrum of the general public.'" *Id.* (quoting Fla. Admin. Code R. 12A-1.008(1)(b)5). Thus, the Florida Supreme Court held that "[b]ecause Florida's differential taxation of the press is content-based, the tax must withstand heightened scrutiny under the First Amendment." *Id.* (citing *Leathers v. Medlock*, 499 U.S. 439, 447 (1991)). "In order to pass this strict scrutiny muster, the tax must serve some compelling state interest and must be narrowly drawn to achieve that end." *Magazine Publishers of America, Inc.*, 604 So. 2d at 462 (citing *Arkansas Writers' Project, Inc.*, 481 U.S. at 231). The supreme court concluded that "[n]either of the reasons advanced by the State constitutes a compelling justification for the content-based taxation of publications," and thus, the tax scheme was invalid under the First Amendment. *Id.* at 463.

¶19. The Mississippi Sales and Use Tax statutes providing an exemption for newspapers from imposition of the sales and use tax in the case sub judice is inherently similar to the Indiana sales tax provisions that afforded newspapers an exemption from imposition of the Indiana sales tax which the Indiana Tax Court ruled was unconstitutionally content-based in violation of the First Amendment. *See Emmis Publ'g Corp.*, 612 N.E.2d at 622. In *Emmis Publishing Corp.*, the Indiana Department of State Revenue's regulation addressing the sales tax exemption for newspapers set forth the following criteria for determining whether a publication qualified for the sales tax exemption provided for newspapers:

(a) General Rule. In general, sales of all publications irrespective of format are taxable. The exemption provided by this rule . . . is limited to sales of newspapers.

(b) Application of the general rule. For purposes of [sales] tax, the term 'newspaper' means only those publications which are:

(1) commonly understood to be newspapers;

*(2) published for the dissemination of news of importance and of current interest to the general public, general news of the day, and information of current events;*

(3) circulated among the general public;

(4) published at stated short intervals;

(5) entered or are qualified to be admitted and entered as second class mail matter at a post office in the county where published; and

(6) printed for resale and are sold.

(c) Publications which are primarily devoted to matters of specialized interest such as business,

political, religious, or sporting matters may qualify for exemption if they also satisfy the criteria listed in subsection 26 of this rule . . . . .

(d) Magazines, periodicals, journals, bulletins, advertising supplements, handbills, circulars, or the like are not newspapers until distributed as a part of a publication which is a newspaper within the meaning of this rule . . . .

(1) Magazines are not construed to be newspapers. The retail sales of all magazines and periodicals are subject to sales tax. The sale of magazines by subscription is subject to sales tax without regard to the price of a single copy, and sales tax must be collected by the seller from the person who subscribes to the magazine on the full subscription price.

(2) For purposes of [sales] tax, the term 'newspaper' shall include advertising inserts. Advertising inserts shall mean only those publications which are:

(A)(i) produced for a person by a private printer and delivered to the newspaper publishers, or

(ii) produced and printed by a newspaper publisher, or

(iii) produced and printed by a person and delivered to the newspaper publisher, and

(B) inserted by the newspaper publisher into the newspapers and distributed along with the newspapers.

Any distribution not meeting the above test does not qualify for the newspaper insert exemption. Examples of items distributed along with a newspaper that do not qualify for the exemption include: gum, shampoo, and detergent samples.

(e) Publications issued monthly, bimonthly, or at longer or irregular intervals are generally not considered to be newspapers.

(f) Racing forms and tip sheets are not newspapers.

(g) A preponderance of advertising, lack of authorization to carry legal advertizing, or lack of a masthead setting forth the publisher, editor, circulation, and place of publication are characteristics of publications other than newspapers.

*Id.* at 616-17 (citations omitted) (emphasis added) (quoting 45 I.A.C. 2.2-5-26). In reviewing precedent setting forth the "circumstances in which a tax upon the press will run afoul of the First Amendment, regardless of the legislature's good or bad motives," the Indiana Tax Court discussed the following three circumstances:

First, a tax that singles out the press for differential treatment is presumptively unconstitutional. *See **Minneapolis Star**, 460 U.S. at 585*. . . . Second, selective taxation of the press that targets a "small group" of members of the press or singles out a "few members" of the press may offend the First Amendment. *Id.* at 591-92. . . . And third, *"for reasons that are obvious, a tax will trigger heightened scrutiny under the First Amendment if it discriminates on the basis of the content of speech." **Leathers**, [499 U.S. at 447.]*

*Emmis Publ'g Corp.*, 612 N.E.2d at 617 (emphasis added) (footnotes omitted). The tax court, after reviewing the divergence within jurisdictions over the issue of whether sales and use tax exemptions for newspapers were content-based or content-neutral,[5] found that the particular language used by the Indiana State Department of Revenue's criteria for determining which publications qualified for the newspaper exemption was unconstitutionally content-based and, thus, had to be narrowly drawn to achieve a compelling state interest. *Id.* at 620. The tax court specifically found subsection (b)(2) of the State Department of Revenue's regulation constituted an unconstitutional content-based criteria to determine whether a publication qualified for the newspaper exemption. *Id.*

¶20. After finding that the criteria used by the Indiana Department of State Revenue was based on the content of the publication, the Indiana Tax Court applied heightened scrutiny to the discriminatory content-based criteria. *Id.* at 621. The Department of State Revenue asserted the following interests as compelling state interests: (1) "the newspaper exemption is a form of subsidy that makes available inexpensive sources of news, thus, enhancing the knowledge and literacy of the public" and (2) "the Department, by virtue of the newspaper exemption, is relieved of the administrative burden and expense of regulating hundreds of newspaper carriers in the collection and remittance of sales tax." *Id.* at 621-22. After weighing the importance of the interests asserted by the Department of State Revenue and the application of the newspaper exemption to achieve those interests, the tax court concluded that "the content-based distinction among publications in 45 I.A.C. 2.2-5-26(b)(2) [was] neither necessary to serve a compelling state interest nor narrowly drawn to achieve that end." *Emmis Publ'g Corp.*, 612 N.E.2d at 622.

¶21. However, several states have found that the newspaper exemption from imposition of the respective sales and use tax levies was not content-based but rather content-neutral, and thus, the tax schemes were held to be constitutionally valid. *See Gallacher v. Commissioner of Revenue Servs.*, 602 A.2d 996, 1005 (Conn. 1992) (holding that Connecticut tax scheme of "exempting newspapers from the generally applicable use tax while not exempting other media does not violate the first amendment"); *Hearst Corp. v. Iowa Dep't of Revenue & Fin.*, 461 N.W.2d 295, 304 (Iowa 1990) (holding that "Iowa tax scheme which exempts 'newspapers,' but not 'magazines' or 'periodicals,' from the generally-applicable Iowa retail sales and use tax is not the type of suspect tax that violates the first amendment"); *Magazine Publishers of Am. v. Commonwealth Dep't of Revenue*, 654 A.2d 519, 523 (Pa.1995) (ruling that the Pennsylvania tax scheme "distinction between newspapers and magazines, as set forth in the newspaper exemption and the provisions that relate to it, is based on the format and frequency of publication, not the content" and, thus, not invalid).

¶22. In *Hearst Corp. v. Iowa Department of Revenue & Finance*, the Iowa Supreme Court held that Iowa's newspaper exemption from imposition of sales and use taxes was based on content-neutral criteria and, thus, was a constitutional taxing scheme. *Hearst Corp.*, 461 N.W.2d at 304. The Iowa Supreme Court found that the term "newspaper" was not defined in the statutes, but the Department of Revenue and Finance in 1981 adopted the definition of a newspaper from Webster's Third New International Dictionary to determine which publications qualified for the sales and use tax exemption. *Id.* at 300. The definition used by the department provided as follows:

> A newspaper is defined as a paper that is printed and distributed daily, weekly, or at some other regular and usually short interval and that generally contains news, articles of opinion (editorials), features, advertising, or other matter regarded as of current interest.

*Id.* (quoting 701 Iowa Admin. Code 18.42(1) (1981) (amended 1982 striking "generally" from definition)). In concluding that the tax scheme was one of general applicability, was not content-based, and was constitutionally valid, even though language in the definition required that in order to be a newspaper the publication had to contain news, editorials, features, advertising, or other matter regarded as of current interest, the Iowa Supreme Court reasoned:

> While the classification of the writing as "news, articles of opinion (editorials), features, advertising, or other matter regarded as of current interest" is a consideration, the focus is not on the content of the journalism. Rather, the form and frequency of the publication are the primary factors for determining whether a publication qualifies for the Iowa sales and use tax exemption. Hearst, or anyone else for that matter, is free under the rule to publish and sell whatever content they choose and to choose whatever form they desire. The Iowa law does not scrutinize the content, but rather the form and frequency of publication. There is no censorial threat, motive, or element imposed by the rules in this case. Because the form of a publication is a noncontent based consideration, the Iowa statute complies with the standards set forth by the Supreme Court in *Arkansas Writers' Project.*

*Id.* at 303.

¶23. In *Gallacher v. Commissioner of Revenue Services*, the Connecticut Supreme Court held that Connecticut's newspaper exemption was not content-based but rather content-neutral. *Gallacher*, 602 A.2d at 1005. The supreme court found that

> because the Connecticut sales and use tax is a general tax that does not target the media or discriminate among media sources of the same type and therefore does not subject only a small, select number of publications to the tax, and because the exemption contained in the statute is not content based, the tax, which exempts newspapers but not the plaintiffs' publications, is not a suspect tax.

*Id.* at 1004-05. However, the Connecticut sales and use tax scheme did not specifically contain language defining the criteria required to qualify as a newspaper, and thus, the supreme court applied generally accepted definitions of a newspaper and "common understanding of what one would envision as a newspaper" to conclude that the determination of what constitutes a newspaper was content-neutral. *Id.* at 1002. The court based its decision that the criteria used to determine whether a publication was a newspaper revolved around the subject matter contents, i.e., whether the publication contained news and other common inclusions in newspapers, and since that determination did not require a review of the viewpoint of the content, the determination was content-neutral. *Id.* at 1002-03.

¶24. In *Magazine Publishers of America v. Commonwealth Department of Revenue*, the Pennsylvania Supreme Court upheld the Pennsylvania sales and use tax exemption for newspapers, but excluded such exemption to magazines, as content-neutral and not a discriminatory content-based criteria for determining whether a publication qualified as a newspaper. *Magazine Publishers of Am.*, 654 A.2d at 523. The Pennsylvania sales and use tax scheme defined the term newspaper as follows:

> Newspaper is defined as:

(1) A printed paper or publication, bearing a title or name, and conveying reading or pictorial intelligence of passing events, local or general happenings, printing regularly or irregularly editorial comment, announcements, miscellaneous reading matter, commercial advertising, classified advertising, legal advertising, and other notices, and which has been issued in numbers of four or more pages at short intervals, either daily, twice or oftener each week, or weekly, continuously during a period of at least six months, or as the successor of such a printed paper or publication issued during an immediate prior period of at least six months, and which has been circulated and distributed from an established place of business to subscribers or readers without regard to number, for a definite price or consideration, either entered or entitled to be entered under the Postal Rules and Regulations as second class matter in the United States mails, and subscribed for by readers at a fixed price for each copy, or at a fixed price per annum. A newspaper may be either a daily newspaper, weekly newspaper, newspaper of general circulation, official newspaper, or a legal newspaper, as defined in this section. Continuous publication within the meaning of this section shall not be deemed interrupted by any involuntary suspension of publication resulting from loss, destruction, failure or unavailability of operating facilities, equipment or personnel from whatever cause, and any newspaper so affected shall not be disqualified to publish official and legal advertising in the event that publication is resumed within one week after it again becomes possible.

(2) A printed paper or publication, regardless of size, contents, or time of issue, or number of copies issued, distributed and circulated gratuitously, is not a newspaper.

(3) A printed paper or publication, not entitled to be entered, or which has been denied entry, as second class matter in the United States mails under the Postal Rules and Regulations of the United States is not a newspaper.

*Id.* at 522 n.6 (quoting 45 Pa.C.S. § 101(a)). In concluding that the Pennsylvania sales and use tax scheme did not constitute a discriminatory content-based scheme, the Pennsylvania Supreme Court stated:

[T]he distinction between newspapers and magazines, as set forth in the newspaper exemption and the provisions that relate to it, is based on the format and frequency of publication, not the content. The exemption provides that all publications which fit within the definition of newspaper shall be exempt from the six per cent sales tax. Newspaper means "a 'legal newspaper' or a publication containing matters of general interest and reports of current events which qualifies as a 'newspaper of general circulation' qualified to carry a 'legal advertisement' as those terms are defined in 45 Pa.C.S. § 101 (relating to definitions), not including magazines." 72 P.S. § 7204(30) (emphasis added). It is clear from this language that all magazines, regardless of their content, are subject to taxation. Thus, we reject Appellants' contention that content is the basis for the inclusion of magazines in the items of tangible personal property that are subject to the sales tax.

*Id.* at 523 (footnotes omitted).

¶25. Thus, when faced with the issue of whether a state's sales and use tax scheme, which provides an exemption to newspapers, uses content-based criteria to determine whether a publication qualifies as

a newspaper and should be provided the exemption from sales and use tax, the ultimate inquiry should be whether the criteria used by the state's taxing authority requires a review of the content of the publication. At the time the use tax was assessed against Service Merchandise, the Mississippi State Tax Commission had adopted as part of its criteria the determination of whether the publication was "originated and published for the dissemination of current news and intelligence of varied, broad and general public interest, announcements and notices, opinions as editorials on a regular or irregular basis, and advertising and miscellaneous reading matter." Miss. Code Ann. § 13-3-31(1)(g) (Supp. 1997). We hold that where such criteria was employed by the Commission to qualify publications as a newspaper and provide an exemption from the sales and use tax, such criteria required an analysis of the content of the publication and, thus, was content-based in violation of the First Amendment of the United States Constitution.

¶26. This conclusion is supported by the Tennessee Supreme Court's decisions in *Newsweek, Inc. v. Celauro* and *Southern Living, Inc. v. Celauro*, the Florida Supreme Court's decision in *Department of Revenue v. Magazine Publishers of America, Inc.*, and the Indiana Tax Court's decision in *Emmis Publishing Corp. v. Indiana Department of State Revenue* which all found similar criteria involving a determination of whether the publication contained matters of general interest and reports of current events to be unconstitutional content-based distinctions. *See**Magazine Publishers of Am., Inc.*, 604 So. 2d at 463; *Emmis Publ'g Corp.*, 612 N.E.2d at 622; *Southern Living, Inc.*, 789 S.W.2d at 253; *Newsweek, Inc.*, 789 S.W.2d at 250.

¶27. This conclusion is distinguishable from the Connecticut Supreme Court's decision in *Gallacher v. Commissioner of Revenue Services* and the Iowa Supreme Court's decision in *Hearst Corp. v. Iowa Department of Revenue & Finance* which involved sales and use tax schemes that did not provide a definition of the term newspaper, and, thus, there were no criteria, other than the dictionary definition of newspaper, to be classified as content-based. *See Gallacher*, 602 A.2d at 1002; *Hearst Corp.*, 461 N.W.2d at 304.

¶28. This conclusion is also distinguishable from the Pennsylvania Supreme Court's holding in *Magazine Publishers of America v. Commonwealth Department of Revenue* in which the court found that the criteria was content-neutral despite the inclusion in the definition of newspaper language referring to a newspaper as a publication "conveying reading or pictorial intelligence of passing events, local or general happenings, printing regularly or irregularly editorial comment, announcements, miscellaneous reading matter, commercial advertising, classified advertising, legal advertising, and other notices." *Magazine Publishers of Am.*, 654 A.2d at 522 n.6 (quoting 45 Pa.C.S. § 101(a)). The court, nevertheless, held that the criteria were content-neutral as determination of whether a publication qualified as a newspaper was based on the form and frequency characteristics of the publication. *Id.* at 523.

¶29. However, we find that an important distinction exists between the statutory language in *Magazine Publishers of America* and the case sub judice. In *Magazine Publishers of America*, the statute defining newspaper also contained the following description of a newspaper: "A printed paper or publication, *regardless of* size, *contents*, or time of issue, or number of copies issued, distributed and circulated gratuitously, is not a newspaper." *Id.* at 522 n.6 (emphasis added) (quoting 45 Pa.C.S. § 101(a)). The criteria used by the Commission at the time of the use tax assessment against Service Merchandise did not include such language specifically stating that a publication distributed and

circulated gratuitously *regardless of its contents* was not a newspaper. Thus, we find that in the case sub judice it is not clear whether or not the contents of the publication were reviewed by the Commission to determine whether the publication should be granted the sales and use tax exemption for newspapers, but it is apparent that the Commission's criteria used to determine whether a publication qualified as a newspaper consisted of content-based criteria.

¶30. As a result, we hold that the trial court erred when it determined that the criteria used by the Commission to determine whether a publication were a newspaper was content-neutral. Specifically, we hold that subsection (g) of Miss. Code Ann. § 13-3-31(1), used by the Commission at the time of assessment in the case sub judice for determining whether a publication qualified as a newspaper for purposes of receiving the sales or use tax exemption, was an unconstitutional content-based criteria for determining which publications qualify for the newspaper sales and use tax exemption. Likewise, we hold that Miss. Code Ann. § 27-65-3(*l*)(vi), the later adopted counterpart to Miss. Code Ann. § 13-3-31(1)(g) for the function of defining a newspaper for sales and use tax purposes, is also an unconstitutional content-based criteria.

¶31. However, this Court has consistently held that:

> It is the Court's duty in passing on the constitutionality of a statute to separate the valid from the invalid part, if this can be done, and to permit the valid part to stand unless the different parts of the statute are so intimately connected with and dependent upon each other as to warrant a belief that the legislature intended them as a whole, and that if all cannot be carried into effect it would not have enacted the residue independently.

*Wilson v. Jones County Bd. of Supervisors*, 342 So. 2d 1293, 1296 (Miss. 1977) (citing *Howell v. State*, 300 So. 2d 774, 781 (Miss. 1974); *American Express Co. v. Beer*, 107 Miss. 528, 536, 65 So. 575 (1914); *Adams v. Standard Oil Co.*, 97 Miss. 879, 53 So. 692 (1910); *Campbell v. Mississippi Union Bank*, 7 Miss. 625 (1842)). Adhering to this duty, we hold that the other criteria listed in Miss. Code Ann. § 27-65-3(*l*) are content-neutral and can stand alone as objective criteria to determine whether a publication qualifies for the newspaper exemption from the imposition of sales and use tax. This conclusion is consistent with the legislature's intention of providing newspapers with an exemption from the sales and use tax as set forth in Miss. Code Ann. §§ 27-65-111(b) & 27-67-7(b). Thus, we hold that Miss. Code Ann. § 27-65-3(*l*)(vi) is severed from the rest of the statute as being an invalid content-based criteria for determining whether a publication should be afforded the newspaper exemption from the imposition of sales and use tax, but the remainder of § 27-65-3(*l*) is to remain in effect as a constitutional content-neutral criteria for determining whether a publication qualifies as a newspaper.

**II. WHETHER THE TRIAL COURT ERRED BY NOT REQUIRING THE COMMISSION TO PUT FORWARD A COMPELLING JUSTIFICATION FOR ITS CONTENT-BASED DISTINCTION BETWEEN SERVICE MERCHANDISE'S PUBLICATIONS AND NON-TAXED NEWSPAPERS.**

**III. WHETHER THE TRIAL COURT ERRED BY NOT REJECTING THE COMMISSION'S JUSTIFICATION OF A LESSER PROTECTION FOR COMMERCIAL SPEECH AS CONSTITUTIONALLY INADEQUATE.**

¶32. Service Merchandise contends that the trial court erred by failing to require the Commission to set forth a compelling justification for its content-based distinction between its publications and newspapers that are exempt from the sales and use tax. Service Merchandise further contends that the chancellor erred by attempting to justify its holding on the state supreme court cases that upheld newspaper sales and use tax exemptions because all of the cases relied on by the chancellor found that the taxing schemes in question did not involve determinations based on the publication's content but were rather determinations based on the content-neutral criteria of the form and frequency of the publication. As a result, Service Merchandise argues that because the Mississippi taxation scheme utilized content-based criteria, such criteria had to be narrowly drawn to achieve a compelling state interest and that no compelling interest has been set forth by the Commission.

¶33. The Commission, in the alternative to its position that the criteria used to determine newspaper status are content-neutral, argues that if the criteria are content-based then the appropriate constitutional analysis, rather than strict scrutiny, i.e., narrowly drawn to achieve a compelling governmental interest, would be the lesser standard of review that is afforded restrictions on commercial speech, i.e., narrowly drawn regulation directly and materially advancing a substantial government interest. Thus, the Commission contends that since the speech discriminated against in the instant case is commercial speech then it should be afforded the lesser standard of review, intermediate scrutiny. In support of this contention, the Commission asserts the following interests as substantial and, thus, contends that the discriminatory tax should pass constitutional scrutiny because newspapers serve the critical functions of: (1) disseminating news and events in an immediate fashion; (2) promoting general welfare and awareness; and (3) encouraging public involvement. The Commission further argues that the sales and use tax exemption provided for newspapers directly advances these critical interests.

¶34. However, the Commission's arguments are unsupported and, at the same time, in contradiction to the overwhelming weight of authority of United States Supreme Court decisions dealing with content-based discrimination between protected First Amendment speech. The Commission, nevertheless, argues that because the party challenging the newspaper exemption from sales and use tax imposition was distributing commercial speech that the lesser standard of review afforded commercial speech should be applied if the exemption constitutes content-based discrimination. To the contrary, the United States Supreme Court has held that "for reasons that are obvious, *a tax will trigger heightened scrutiny under the First Amendment if it discriminates on the basis of the content of taxpayer speech.*" *See Leathers*, 499 U.S. at 447 (emphasis added) (citing *Arkansas Writers'*, 481 U.S. at 229-31). Moreover, application of the intermediate scrutiny afforded commercial speech is appropriate when there is a challenge made by a party against a statute or ordinance that regulates, burdens or restricts commercial speech in some shape, form or fashion. *See Florida Bar v. Went-For-It, Inc.*, 515 U.S. 618, 623 (1995) (stating "we engage in 'intermediate' scrutiny of restrictions on commercial speech, analyzing them under the framework set forth in [*Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n of N.Y.*, 447 U.S. 557 (1980)]").

¶35. In the case sub judice, however, Service Merchandise does not challenge a regulation restricting commercial speech but rather challenges a content-based discriminatory sales and use tax scheme that affords a different form of First Amendment speech an exemption from the sales and use tax. Therefore, since the sales and use tax scheme that provides an exemption for newspapers involves content-based criteria, such taxing scheme discriminates based on the content of taxpayer speech, and

thus, the tax is unconstitutional unless it survives heightened scrutiny.

¶36. In order to survive this heightened scrutiny standard of review, the tax must serve some compelling state interest and must be narrowly drawn to achieve that end. *See **Leathers**, 499 U.S. at 447; **Arkansas Writers'**, 481 U.S. at 231*. The Commission asserts the following interests as compelling justifications for the newspaper sales and use tax exemption: (1) the dissemination of news and events in an immediate fashion; (2) promoting general welfare and awareness; and (3) encouraging public involvement. However, we hold that the compelling interests asserted by the Commission do not pass constitutional scrutiny, and thus, the tax scheme is unconstitutional as a content-based discrimination between different forms of protected First Amendment speech.

¶37. In support of this conclusion, similar asserted interests have been rejected by other state courts applying strict scrutiny analysis to discriminatory content-based tax schemes. *See, e.g.*, ***Department of Revenue v. Magazine Publishers of Am., Inc.***, 604 So. 2d 459, 462-63 (Fla. 1992) (rejecting Department's contention "that the newspaper exemption furthers the compelling state interest of encouraging the literacy and general knowledge of Florida's citizens" based on the conclusion that such interest was merely a legitimate interest and that "the tax scheme [was] not narrowly tailored to achieve that end"); ***Emmis Publ'g Corp. v. Indiana Dep't of State Revenue***, 612 N.E.2d 614, 621-22 (Ind. Tax Ct. 1993) (holding content-based tax scheme unconstitutional as not being narrowly tailored toward achieving asserted interests that newspaper exemption was "a form of subsidy that makes available inexpensive sources of news, thus, enhancing the knowledge and literacy of the public" and provided "relie[f] of the administrative burden and expense of regulating hundreds of newspaper carriers in the collection and remittance of sales tax"); ***Southern Living, Inc. v. Celauro***, 789 S.W.2d 251, 253 (Tenn. 1990) (holding that "[t]he immed iate and timely dissemination of information to the public" was not a compelling governmental interest and that, "[m]oreover, the exemption statute [was] not narrowly tailored to meet the asserted governmental interest"); ***Newsweek, Inc. v. Celauro***, 789 S.W.2d 247, 250 (Tenn. 1990) (same). Thus, analogous to the above decisions, in particular the two companion cases decided by the Tennessee Supreme Court, we hold that the Commission's asserted interests that the newspaper exemption serves the critical functions of (1) disseminating news and events in an immediate fashion, (2) promoting general welfare and awareness, and (3) encouraging public involvement are not compelling governmental interests.

¶38. Furthermore, in ***Department of Revenue v. Magazine Publishers of America, Inc.***, the Florida Supreme Court held that Florida's content-based sales and use tax scheme affording newspapers an exemption was not narrowly tailored to achieve those ends because "[t]he State need not look to the content of the publications to attain the desired goal of increased public knowledge and literacy. Moreover, magazines and other publications not eligible for the exemption also provide a wealth of information to the public." ***Magazine Publishers of Am., Inc.***, 604 So. 2d at 463. Analogously, we hold that the Mississippi sales and use tax scheme is not narrowly tailored to achieve its asserted interests because there is no logical reason to require a review of the content of a publication to achieve its asserted interests.

¶39. As a result, we hold that Mississippi's sales and use tax scheme providing newspapers an exemption utilizes discriminatory content-based criteria to determine whether a publication qualifies as a newspaper, and thus, the tax scheme violates the First Amendment of the United States

Constitution.

## IV. WHETHER THE APPLICABLE REMEDY UNDER MISSISSIPPI LAW FOR OVERPAYMENT OF USE TAX UNDER AN UNCONSTITUTIONAL TAX SCHEME REQUIRES THE REFUND OF ALL PAYMENTS MADE BY SERVICE MERCHANDISE.

¶40. Service Merchandise contends that in order to keep with federal due process requirements, Mississippi law mandates that the State refund all payments made by a taxpayer under a taxing scheme subsequently deemed unconstitutional or otherwise illegal. In support of this position, Service Merchandise cites to this Court's decision in *Marx v. Broom*, 632 So. 2d 1315 (Miss. 1994), where this Court granted a full refund for overpayment of taxes under an unconstitutional taxing scheme. *Marx*, 632 So. 2d at 1318.

¶41. The Commission, however, argues that the appropriate remedy if the newspaper exemption of the sales and use tax scheme is found unconstitutional is not a refund but instead the striking of the newspaper exemption from the sales and use tax statutes. The Commission further attempts to distinguish *Marx v. Broom* on the basis that *Marx* involved the wrongful levy of a tax and not the wrongful granting of an exemption. In support of its position, the Commission cites to a Tennessee Supreme Court decision in 1986, *Sears, Roebuck & Co. v. Woods*, 708 S.W.2d 374 (Tenn. 1986), which held:

> However, even if this Court were to find that the exemptions for newspapers and shoppers advertisers are violative of the Equal Protection Clause, it would provide Sears no remedy. Striking down of the exemptions for these publications would simply bring them within the ambit of the tax and would not remove preprints from the coverage of the tax. Courts cannot create a tax exemption where the legislature has not provided one.

*Sears, Roebuck & Co.*, 708 S.W.2d at 383.

¶42. This Court, in *Marx v. Broom*, held that where a tax was levied under an unconstitutional taxing scheme the applicable remedy was to give a full refund to the taxpayers who had the tax levied on them under the unconstitutional scheme. *Marx*, 632 So. 2d at 1322-23. In *Marx*, the chancery court held that "state residents who were also federal retirees were entitled to a refund of state income taxes paid under the state's unconstitutional tax scheme which taxed federal retirees while exempting the state's own retired employees," and the Mississippi State Tax Commission appealed to the Supreme Court. *Id.* at 1316. The applicable refund statute in *Marx* was Miss. Code Ann. § 27-7-313 which provided:

> In the case of any overpayment of any tax, interest or penalty levied or provided for in article 1 of this chapter, or in this article, whether by reason of excessive withholding, error on the part of the taxpayer, erroneous assessment of tax, or otherwise, the excess shall be refunded to the taxpayer.

*Id.* at 1317 (quoting Miss. Code Ann. § 27-7-313 (Supp. 1993)). The Court rejected the Commission's argument that "refunds are not to be given for a constitutional challenge but only for other errors or excessive withholding" by holding that "[t]he plain words of the statute say that any

overpayment of Mississippi taxes for any reason shall be refunded to the taxpayer." *Id.*at 1318. Thus, under applicable Mississippi case law, where a tax is assessed under an unconstitutional taxing scheme, the appropriate remedy is for the taxpayer to be given a refund from the levy of the unlawful tax. *Id.*

¶43. However, the case sub judice is distinguishable from *Marx* on the grounds that the taxpayers in *Marx* were challenging the tax as being unlawful and not the exemption. *See**Thayer v. South Carolina Tax Comm'n*, 413 S.E.2d 810, 815 (S.C. 1992). In *Thayer v. South Carolina Tax Commission*, the South Carolina Supreme Court held that South Carolina's sales and use tax scheme granting an exemption from use tax to religious publications was in violation of the establishment clause of the First Amendment. *Thayer*, 413 S.E.2d at 813-14. However, the court, in determining that the taxpayer, which was assessed a use tax on its real estate advertising publication, was not entitled to a refund, reasoned:

> Appellant asserts that *McKesson v. Division of Alcoholic Beverages & Tobacco*, 496 U.S. 18, 110 S.Ct. 2238, 110 L.Ed.2d 17 (1990), mandates that her tax assessment be forgiven. She claims that any attempt to subject her to tax after an exemption is removed would deprive her of due process. We disagree. *McKesson* must be read in conjunction with its companion case, *American Trucking Associations, Inc. v. Smith*, 496 U.S. 167, 110 S.Ct. 2323, 110 L.Ed.2d 148 (1990). The Court in *American Trucking* makes it clear that *McKesson* requires relief as a matter of federal law only when taxpayers involuntarily pay a tax that is unconstitutional under existing precedents. *McKesson* is inapplicable when, as here, taxpayers have been subjected to a constitutional tax. The fact that we have found section 12- 35-550(7) as it pertains to religious publications to be unconstitutional does not render appellant's tax burden unconstitutional. The language of a tax exemption statute must be given its plain, ordinary meaning and must be strictly construed against the claimed exemption. *John D. Hollingsworth onWheels, Inc. v. Greenville County Treasurer*, 276 S.C. 314, 278 S.E.2d 340 (1981). Appellant was not entitled to an exemption in the past; nor is she entitled to an exemption now that we have severed that portion of section 12-35-550(7) relating to religious publications. This Court cannot create an exemption by reading something into the statute which the Legislature did not intend. *See Creech v. South Carolina Public Service Authority*, 200 S.C. 127, 146, 20 S.E.2d 645, 652 (1942).

*Id.* at 815. Likewise, we adopt the reasoning of the South Carolina Supreme Court to hold that Service Merchandise is not entitled to a refund of the use tax assessments in this case.

¶44. In the case sub judice, we agree with the South Carolina Supreme Court's conclusion that *McKesson* is inapplicable when taxpayers have been subjected to a constitutional tax. By finding a portion of the criteria used by the Commission as unconstitutionally content-based and severing that unconstitutional criteria from the definition of a newspaper, as contained in Miss. Code Ann. § 27-65-3(*l*), we do not render that the use tax imposed on Service Merchandise was an unconstitutional tax burden. This Court, in *Mississippi State Tax Commission v. Medical Devices, Inc.*, stated that:

> "When the statute purports to grant an exemption from taxation, the universal rule of construction is that the tax exemption provision is to be construed strictly against the one who asserts the claim of exemption, in the absence of expressed legislative intent that the exemption

is to be construed otherwise."

***Mississippi State Tax Comm'n v. Medical Devices, Inc.***, 624 So. 2d 987, 991 (Miss. 1993) (quoting ***Monaghan v. Jackson Casket Co.***, 242 Miss. 840, 850-51, 136 So. 2d 603, 606 (1962)). Service Merchandise was not entitled to the newspaper exemption from imposition of the use tax in the past, nor is it entitled to the exemption now that Miss. Code Ann. § 27-65-3(*l*)(vi) has been severed from the definition of a newspaper for purposes of determining which publications qualify for the exemption. Analogous to ***Thayer***, we cannot create an exemption by reading something into the statute which the Legislature did not intend. *See State v. Heard*, 246 Miss. 774, 781, 151 So. 2d 417, 420 (1963). As a result, Service Merchandise is not entitled to a full refund for the amount of use tax assessed against it.

> **V. WHETHER THE TRIAL COURT ERRED BY NOT REJECTING THE USE TAX IMPOSED ON SERVICE MERCHANDISE'S POSTAGE IN LIGHT OF THE FACT THAT A SIMILAR SALES TAX WOULD NEVER BE IMPOSED ON THE SAME PRODUCT.**

> **VI. WHETHER THE TRIAL COURT ERRED BY TAKING THE VIEW THAT MISSISSIPPI COULD LAWFULLY IMPOSE A USE TAX ON SERVICE MERCHANDISE'S UNITED STATES POSTAGE COSTS.**

¶45. Service Merchandise, in the alternative to a full refund based on the unconstitutionality of the content-based use tax exemption, contends that the trial court erred by not rejecting the use tax imposed on the amount paid to the federal government for postage costs and by taking the view that the Commission could impose the use tax on the part of the purchase price used to pay for the United States postage costs. In support of its argument, Service Merchandise contends that the use tax was imposed improperly and not in accordance with Mississippi's sales and use tax scheme because the use tax is not to be imposed on items that no sales tax is imposed on. Service Merchandise also supports its argument by citing to Rule 51(b) of the Mississippi State Tax Commission which provides that "'[w]here stamped envelopes or post cards are purchased and printed for the customers, the amount of the postage may be deducted from the total charge [for purposes of computing the sales tax to be collected].'" Code Miss. R. 48090 001- 43 (1997). Furthermore, Service Merchandise argues that such an assessment of use tax on United States postage is in effect a state tax on a federal instrumentality which is expressly prohibited by 31 U.S.C. § 3124(a) (1996). As a result, Service Merchandise requests a refund of the amount of use tax assessed against it in proportion to the amount of United States postage that was paid for the delivery of the catalogs and advertisement fliers into Mississippi in the amount of $145,420.00 in which it was assessed in tax and interest for use tax on postage, plus post-payment interest which has accrued.

¶46. The Commission on the other hand argues that the use tax was properly imposed because Service Merchandise paid as total charges under the contract the delivery costs which included the chosen method of delivery as the United States Postal Service, and in support of this position, the Commission asserts authority to do so under Miss. Code Ann. § 27-67-3(f) which provides:

> "Purchase price" or "sales price" means the total amount for which tangible personal property is purchased or sold, valued in money, including any additional charges for deferred payment, installation and service charges, **and freight charges to the point of use within this state**,

without any deduction for cost of property sold, expenses or losses, or taxes of any kind except those exempt by the sales tax law. "Purchase price" or "sales price" shall not include cash discounts allowed and taken or merchandise returned by customer when the total sales price is refunded either in cash or by credit, and shall not include amounts allowed for a trade-in of similar property.

Miss. Code Ann. § 27-67-3(f) (1990) (emphasis added). The Commission also argues that the reason that Rule 51(b) is not applicable is because Service Merchandise did not take actual physical possession of the catalogs and advertising fliers but instead paid the printer the full purchase price, including delivery. Furthermore, the Commission argues that it is not taxing the United States government, its instrumentalities, or obligations but, instead, the purchase price paid by Service Merchandise.

¶47. The sales tax and use tax in Mississippi are collected in a complementary manner, i.e., where the sales tax is not collected on the sale of tangible personal property then a use tax is similarly not collected on the use of that same type of property in the State of Mississippi. This taxing scheme is set forth in Miss. Code Ann. § 27-67-7(b) which provides:

> The tax levied by this article shall not be collected in the following instances:
>
> (b) On the use, storage or consumption of tangible personal property to the extent that sales of similar property in Mississippi are either excluded or specifically exempt from sales tax or are taxed at the wholesale rate.
>
> This exemption shall be confined to the use of property the sale of which is an itemized exemption in the Mississippi Sales Tax Law, or to use by persons who are listed in said law as being exempt from sales tax.

Miss. Code Ann. § 27-67-7(b) (Supp. 1997). There is no specific exemption stated in the Mississippi Sales Tax Law that provides for an exemption for the sale of postage stamps. However, the Mississippi State Tax Commission, in its Rules and Regulations adopted by the Sales and Use Tax Division, has adopted Rule 51 governing taxation of the printing industry. Rule 51 provides the following:

> Sales. Gross proceeds of sales by persons engaging in the printing business are taxable at the regular retail rate of tax on the total charge with the following exceptions:
>
> (b) *Where stamped envelopes or post cards are purchased and printed for the customers, the amount of the postage may be deducted from the total charge.*

Code Miss. R. 48 090 001-43 (1997) (emphasis added). Furthermore, the State Tax Commission's agent, Eddie Beck, at trial in the lower court, when questioned about the effect of Rule 51(b) conceded that there was no sales tax imposed on postage:

> Q: It effectively exempts postage from the gross proceeds of sale, does it not?
>
> A: Well, it does if you're taking possession of that postage.

Mr. Beck's response admits that sales tax is not imposed on postage, but we hold that his attempted distinction, and also the Commission's position on appeal, that sales tax can be imposed if the purchaser does not take possession of the postage pre-paid printed material is illogical and amounts to a situation where sales tax can be imposed on a postage stamp which is prohibited by federal statutes. 31 U.S.C. § 3124(a) provides:

> Stocks and obligations of the United States Government are exempt from taxation by a State or political subdivision of a State. The exemption applies to each form of taxation that would require the obligation, the interest on the obligation, or both, to be considered in computing a tax, except--
>
> (1) a nondiscriminatory franchise tax or another nonproperty tax instead of a franchise tax, imposed on a corporation; and
>
> (2) an estate or inheritance tax.

31 U.S.C. § 3124(a) (1994). An obligation of the United States Government is defined in 18 U.S.C. § 8 as follows:

> The term "obligation or other security of the United States" includes all bonds, certificates of indebtedness, national bank currency, Federal Reserve notes, Federal Reserve bank notes, coupons, United States notes, Treasury notes, gold certificates, silver certificates, fractional notes, certificates of deposit, bills, checks, or drafts for money, drawn by or upon authorized officers of the United States, stamps and other representatives of value, of whatever denomination, issued under any Act of Congress, and canceled United States stamps.

18 U.S.C. § 8 (1994). Thus, we find that whether the sales, or in this case use, tax is imposed on the United States Government or Service Merchandise the end result is that there is a tax imposed on postage, which is an obligation of the United States Government and violates 31 U.S.C. § 3124(a) (1994).

¶48. As a result, we hold that the trial court erred by upholding the Commission's imposition of the use tax on Service Merchandise for the portion related to postage costs incurred by Service Merchandise to have the catalogs and fliers delivered by the United States Postal Service and order a refund to Service Merchandise for the portion of the use tax paid that represented the imposition of the use tax on the postage costs plus interest and post-payment interest.

**CONCLUSION**

¶49. We hold that the criteria used by the Commission for determining whether a publication qualified for the newspaper exemption from imposition of sales and use tax included unconstitutional content-based criteria in violation of the First Amendment of the United States Constitution. However, in accordance with *Wilson v. Jones County Board of Supervisors*, we are inclined to sever the invalid, unconstitutional portion of the definition of newspaper, i.e., Miss. Code Ann. § 27-65-3(*l*)(vi), and leave intact the remainder of the definition for determining whether a publication qualifies for the newspaper exemption as a valid content-neutral criteria. Furthermore, Service Merchandise is not entitled to a full refund of the use tax assessment paid, for to do so would create a

tax exemption where the legislature did not intend for there to be an exemption.

¶50. However, we hold that Service Merchandise is entitled to a refund for the amount of use tax, including pre-payment and post-payment interest, that was assessed in proportion to the charge of United States postage costs for delivery into the State of Mississippi the advertising fliers and sales catalogs, because to not do so would effectively result in the imposition of a sales and use tax on United States postage in violation of 31 U.S.C. § 3124(a). This cause is remanded to the chancery court for the determination of the appropriate refund.

¶51. **AFFIRMED IN PART, REVERSED AND REMANDED IN PART FOR PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION.**

**PRATHER, C.J., ROBERTS, MILLS AND WALLER, JJ., CONCUR. BANKS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY SULLIVAN AND PITTMAN, P.JJ., AND McRAE, J. McRAE, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED IN PART BY SULLIVAN, P.J.**


**BANKS, JUSTICE, DISSENTING:**

¶52. For the reasons and rationale embodied in the opinion of the chancery court, a copy of which is annexed hereto and incorporated herein by reference, I dissent.


IN THE CHANCERY COURT OF THE FIRST JUDICIAL DISTRICT

OF HINDS COUNTY, MISSISSIPPI


H. J. WILSON CO., INC. PLAINTIFF

v. 149,278 O/3

(CONSOLIDATED)


STATE TAX COMMISSION OF THE

STATE OF MISSISSIPPI DEFENDANT


OPINION OF THE COURT


Plaintiff, H. J. Wilson Co., Inc., initiated this action to recover Mississippi use tax allegedly improperly charged and paid. Plaintiff filed two separate complaints against defendant, State Tax Commission of the State of Mississippi, pursuant to Mississippi Code Annotated §27-67-

25 (Rev. 1990), which were subsequently consolidated for all purposes by order of this Court. Following discovery, the case was tried. At trial, plaintiff called two witnesses: Ms. Donna Adams, director of tax for plaintiff's corporate parent, Service Merchandise, Inc., a Tennessee corporation ("SMC"), and Mr. Stephen Handy, director of store marketing, national promotions and media distribution for SMC. Defendant called as its only witness Mr. Eddie Beck, Assistant to its Chairman. Numerous exhibits were introduced. Both parties submitted post-trial briefs. Pursuant to the express language of section 27-67-25, this Court's jurisdiction of this case is original.

The material facts are not in dispute. The parties' stipulated facts include the following:

1. Plaintiff is a Louisiana corporation that is qualified to do business in this state, where it operates six retail establishments. Plaintiff is wholly owned by SMC.

2. Defendant is charged with the duty of administering and enforcing the Mississippi Use Tax Law, and is sued here in its official capacity.

3. Plaintiff seeks to recover the total sum of $658,150.23 consisting of use tax and interest paid by SMC on plaintiff's behalf, pursuant to defendant's audit and assessment against plaintiff for the taxable periods June 1, 1986 through September 30, 1989 ("First Audit Period"), and October 1, 1989 through June 30, 1992 ("Second Audit Period"), respectively.

4. The challenged use-tax assessments are based upon the cost of plaintiff's advertisements, specifically catalogs and flyers, which were mailed from outside Mississippi directly to Mississippi residents by the United States Postal Service ("USPS"), at no cost to the recipients. The parties' agreed pretrial order and joint statement indicates these materials were mailed by the printers, pursuant to contract with SMC.

5. Advertising circulars were also inserted into certain Mississippi newspapers and delivered as a part of the newspaper, pursuant to contract between SMC and the newspapers. Pursuant to its interpretation of the statutory use-tax exemption for daily or weekly newspapers, no Mississippi use tax was levied by defendant on these newspaper advertising inserts.

6. Advertising catalogs, flyers and inserts were also mailed to plaintiff's six stores in Mississippi for customer use. Plaintiff does not contest the use tax imposed by defendant on these advertising materials.

7. SMC controls the business operations of its subsidiaries, including plaintiff. These operations include advertising. SMC allocates its costs for these operations among its subsidiaries, including plaintiff, based upon the subsidiary's pro rata share of total corporate monthly sale.

8. Plaintiff bore the burden of the challenged use tax and interest. Other than the challenged tax, no sales or use tax was paid on the direct-mail advertising materials at issue.

9. Prior to initiating this action, plaintiff pursued timely, albeit unsuccessful, appeals from the challenged use-tax assessments to defendant's Board of Review and to defendant.

Use Tax

The Mississippi Use Tax Law is codified at Mississippi Code Annotated §§27-65- 1 through - 35 (Rev. 1990 & Supp. 1996). The use tax is levied upon the user's privilege of using, storing or consuming tangible personal property within this state, possession of which is acquired in any manner. Sections 27-65-5 and 27-67-13. The tax base is "the purchase or sales price, or value, as defined in [the Mississippi Use Tax Law]." Section 27-67-5(a). "Purchase price" or "sales price" is defined as the total amount for which the tangible personal property is sold, "including any additional . . . freight charges to the point of use within Mississippi, without deduction for cost of property sold, expenses or losses, or taxes of any kind except those exempt by the sales tax law." Section 27-67-3(f). *Accord* Mississippi Sales and Use Tax Rule 42. "Value" of imported sales promotion or advertising materials is defined as "an amount not less than the cost paid by the transferor." Section 27-67-3(h).

Arguments

Plaintiff bears the burden to show the assessment of the tax paid was incorrect. Section 27-67-25. Plaintiff challenges both the computation of the use-tax base and the constitutionality of the tax. Because constitutional issues are not reached unless necessary for the decision of a case, this Court first addresses plaintiff's non-constitutional claims. *Robinson v. Robinson,* 554 So. 2d 300 (Miss. 1989).

I. Computation of use-tax base

(A) Inclusion of postage

The parties stipulated that, with respect to the Second Audit Period only, the use-tax base included plaintiff's postal charges incurred in mailing catalogs and flyers to Mississippi residents. The stipulated amount of use tax allocable to said postage charges is $100,965.00, plus interest of $44,455.00. Plaintiff raises several arguments challenging the inclusion of postage in the use-tax base.

Relying upon Mississippi Sales and Use Tax Rule 51(b) and Mr. Beck's testimony, plaintiff asserts it was error to impose a compensating use tax on postage where no sales tax would be imposed. This argument fails because plaintiff fails to establish its premise, *i.e.,* that no sales tax would be imposed. Although Mr. Beck testified that no sales tax would be imposed on the sale of postage, he also testified that postage would be subject to sales or use tax when included in the sales price as a cost of shipment. Statutory support for Mr. Beck's testimony may be found at section 27-67-3(f) (defining "purchase price" or "sales price" for use-tax purposes to include freight charges to the point of use), section 27-65-3(h) (defining "gross proceeds of sales" for sales-tax purposes to include delivery charges), and section 27-65-13 (levying sales tax on the gross proceeds of sales or gross income or values, as applicable). Further, Mr. Beck testified that Rule 51(b), which provides that printers may reduce their gross proceeds of retail sales by the amount of postage where stamped envelopes or post cards are purchased and printed for the customer, is applied only where the customer takes possession of the postage-paid envelopes or post cards from the printer. In contrast, the evidence showed that plaintiff did not take

possession of the advertising which is the subject of the challenged tax, but that the printer arranged for distribution of the finished advertising materials in accordance with plaintiff's mailing profile. *See* Trial Exhibit Number 6, "Plaintiff's Example Printing Contract."

Citing, *McCullough v. Maryland,* 17 U.S. (4 Wheat.) 316 (1819), plaintiff summarily argues that taxing postage conclusively offends the venerable federal doctrine of intergovernmental tax immunity, as implemented by 4 U.S.C. §107 and 31 U.S.C. §3124. This argument is not persuasive. The modern interpretation of this doctrine is that "[a]bsolute tax immunity is appropriate only when the tax is on the United States itself 'or on an agency or instrumentality so closely connected to the Government that the two cannot realistically be viewed as separate entities, at least insofar as the activity being taxed is concerned.'" *California State Board of Equalization v. Sierra Summit, Inc.,* 490 U.S. 844, 848 (1989) (quoting *United States v. New Mexico*, 455 U.S. 720 ( 1982)). Significantly, the tax at issue in the present case was on plaintiff, not the United States or any inseparable entity thereof.

Further, there is no clear showing that either section 107 or section 3124 applies on the facts of this case. *See generally Calif. State Bd. of Equalization,* 490 U.S. 844 (observing that courts must proceed carefully when asked to recognize an exemption from state taxation that Congress has not clearly expressed). Section 107 preserves the doctrine of intergovernmental-tax immunity where state use tax is imposed on or from the United States or any instrumentality thereof or any "authorized purchaser" therefrom, the latter term denoting purchases from commissaries, ship's stores, or certain organizations of Armed Forces personnel. *United States v.* State *Tax Commission of the State of Mississippi, et al.,* 421 U.S. 599 (1975). In the present case, the challenged tax was imposed on plaintiff, not a federal agency or "authorized purchaser." Section 3124 exempts from state taxation certain interest-bearing obligations of the United States which are needed to secure credit to carry on the necessary functions of government. *Rockford Life Ins. Co.* v. *Department of Revenue,* 482 U.S. 182 (1987) (decided under prior formulation of section 3124, which was without substantive changes). This Court is aware of no authority extending the section 3124 exemption to postage.

### (B) Inclusion of reimbursed costs

As the parties stipulated, during both audit periods the use-tax base included certain production costs for which SMC was reimbursed by the individual vendors pursuant to separate advertising cooperative agreements between them. The stipulated amount of use tax allocable to the reimbursed costs is $81,493.00, plus interest of $49,392.00, in the First Audit Period, and $120,986.00, plus interest of $53,270.00, in the Second Audit Period. Plaintiff argues it was error to tax its gross, rather than its net, cost of production. This argument is unsupported by reference to persuasive statutory or decisional law. As previously noted, by express statutory language, the use-tax base is defined as the purchase or sales price, or value, without any reference to deduction for reimbursed costs that are ultimately recovered by the user. Sections 27-65-3(f) and (h); Section 27-67-5(a).

### II. Constitutional Issues

Statutes are presumed to be constitutional. *Jones v. Harris,* So. 2d 120 (Miss. 1984). A statute will not be held unconstitutional unless the evidence is clear and convincing that it violates a constitutional limitation. *Illinois Central Railroad Co. v. Williams,* 242 Miss. 586 (1961).

(A) Definition of "use"

Citing *Connally v. General Construction Co.,* 269 U.S. 385 (1926), plaintiff argues the Mississippi Use Tax Law's definition of "use" is unconstitutionally vague because it provides no standard for application. Section 27-67-3(k), which sets forth the challenged definition, reads in full as follows:

(k) "Use" or "consumption" means the first use or intended use within this state of tangible personal property and shall include rental or loan by owners or use by lessees or other persons receiving benefits from use of the property. "Use" or "consumption" shall include the benefit realized or to be realized by persons importing or causing to be imported into this state tangible advertising or sales promotion materials.

More specifically, plaintiff contends the statutory term "benefit realized" is impermissibly vague, for which reason the use tax is computed on a cost basis even though cost bears no reasonable or necessary correlation to the "benefit realized."

Plaintiff's vagueness challenge presumably arises from the protection against state deprivation of property without due process of law found in the United States Constitution's Fourteenth Amendment. The standards for evaluating such a challenge have been summarized as follows:

Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory applications.

*Village of Hoffman Estates v. Flipside Hoffman Estates, Inc.,* 455 U.S. 498 (1982) (quoting *Grayned v. City of Rockford,* 408 U.S. 104 ( 1972)).

In applying these standards, the degree of vagueness that the Constitution tolerates depends on the nature of the challenged statute. *Village of Hoffman Estates,* 455 U.S. 498. In the present case, the challenged legislation regulates business behavior. Economic legislation is subject to a less-strict vagueness test, in part, because businesses can be expected to plan behavior carefully and consult relevant legislation in advance of action. *Id.*

This Court concludes that section 27-67-3(k), in its entirety, is not unconstitutionally vague and affords a person of ordinary intelligence a reasonable opportunity to know that importation of tangible advertising materials into Mississippi may constitute a taxable event for use-tax purposes. Further, plaintiff's argument is unpersuasive that the use tax is computed on a cost

basis because the term "benefit realized" is unconstitutionally vague. As previously noted, the measure of the use-tax base is clearly defined elsewhere in the Mississippi Use Tax Law, specifically section 27-67-5(a) and the attendant definitional sections 27-67-3(f) and (h).

## (B) Use-Tax Exemption for Newspapers

It is undisputed that daily and weekly newspapers are statutorily exempt from Mississippi's use tax. *See* Miss. Code Ann. §27-65- 111(b)(exempting newspapers from sales tax); section 27-67-7(b) (exempting from use tax tangible personalty if its sale is specifically exempted from sales tax). It is also undisputed that no such exemption is provided for advertising materials, subject to the proviso that defendant interprets the statutory exemption for newspapers to include advertising inserts that are delivered by the printer to the newspaper and sold or distributed as a part of the newspaper. Plaintiff argues that, because newspapers and advertising inserts in newspapers are exempt, but its direct-mail advertising materials are subject to tax, the use-tax scheme violates its federal constitutional rights to free speech, free press and equal protection. United States Constitution, arts. I and XIV. On this basis, plaintiff prays for a full refund of the entire $658,150.23 at issue. This Court finds no merit to plaintiff's constitutional arguments.

Plaintiff inaccurately cites *Minneapolis Star and Tribune Co. v. Minnesota Comm'r of Revenue*, 460 U.S. 575 (1983), for the proposition that differential taxation, in and of itself, is a presumptively unconstitutional form of regulation. The tax at issue in that case was a Minnesota special-use tax on the cost of paper and ink consumed in the production of publications, which was held unconstitutional because it singled out the press for special treatment and targeted a small group of newspapers to bear the tax burden. *Leathers v. Medlock*, 499 U.S. 439 (1991). In contrast, the Mississippi use tax at issue in the present case is a tax of general applicability that applies to the use, storage or consumption of all tangible personal property, unless within a group of specific exemptions. *Cf. id.* (finding the Arkansas sales tax is a tax of general applicability). There is no evidence to demonstrate that the Mississippi use tax singles out the press or any small group thereof for special treatment. Where a state imposes a generally applicable tax, there is little cause for concern. *Minneapolis Star and Tribune Co.,* 460 U.S. 575.

Plaintiff argues the Mississippi use-tax scheme violates the First Amendment because the newspaper exemption is applied on the basis of the publication's content. This Court finds no clear and convincing evidence of constitutionally-invalid content-based discrimination. It is undisputed that the Mississippi Use Tax Law contained no definition of "newspaper" at the times pertinent to this case. Instead, as the evidence showed, defendant was guided by Mississippi Code Annotated § 13-3-31 (Supp. 1996), which sets forth the factors for identifying publications for the placement of summons, order, citation, advertisement or other legal notice required to be published in a newspaper in this state.[6] These factors include distinctions based on both form and content. On similar facts, other jurisdictions have upheld statutory tax exemptions for newspapers reasoning that the newspapers may be identified by constitutionally-permissible distinctions based upon format, such as frequency of publication. *E.g., Magazine Publishers of American v. Commonwealth of Pennsylvania,* 539 Pa. 563, 654 A. 2d 519 (1995); *Gallacher, et. at. v. Comm'r of Revenue Services,* 221 Conn. 166, 602 A.2d 996 (1992). *See*

*also Hearst Corp. v. Iowa Dep 't of Revenue and Finance,* 461 N.W. 2d 295 (Iowa 1990), *cert. denied,* 499 U.S. 983 (1991) (holding that, while classification of the publication's writing as news was a consideration, its form and frequency of publication were the primary factors for determining its qualification for the tax exemption for newspapers).

Certainly, heightened scrutiny under the First Amendment is triggered if a tax discriminates on the basis of the content of taxpayer speech. *Leathers,* 499 U.S. 439. Citing *Arkansas Writers' Project, Inc. v. Ragland,* 481 U.S. 221 (1987), *Minneapolis Star and Tribune Co.*, 460 U.S. 575, and *Grosjean v. American Press Co., Inc.*, 297 U.S. 233 (1936), plaintiff contends a state taxation scheme that discriminates between "two different types of political speech," absent an overriding government interest that cannot be achieved without such differential taxation, is forbidden. Unlike the taxpayer speech at issue in these cited authorities, however, advertising is generally categorized as commercial speech and accorded "a measure of First Amendment protection" that is satisfied if a narrowly-drawn regulation directly and materially advances a substantial governmental interest. *Florida Bar v. Went for It, Inc.*, ___ U.S. ___, ___, 115 S.Ct. 2371, 1275 (1995). As the United States Supreme Court there explained.

We have always been careful to distinguish commercial speech from speech at the First Amendment's core. "'[C]ommercial speech [enjoys] a limited measure of protection, commensurate with its subordinate position in the scale of First Amendment values,' and is subject to 'modes of regulation that might be impermissible in the realm of noncommercial expression.'". . . We have observed that "'[t]o require a parity of constitutional protection for commercial and noncommercial speech alike could invite dilution simply by a leveling process, of the force of the Amendment's guarantee with respect to the latter type of speech."'

*Id.* (citations omitted).

In the present case, plaintiff cites no persuasive authority for the issue at hand, *i.e.,* whether a state tax of general applicability that differentiates between noncommercial speech (newspaper) and commercial speech (advertising) violates the First Amendment. Although denial of a state-tax exemption constitutes a violation of the First Amendment where the taxpayer engaged in certain political speech and the denial was aimed at "the suppression of dangerous ideas," *Speiser v. Randall,* 357 U.S. 513 (1958), there is no evidence of such conduct here. Thus, in the absence of any clear authority applicable on the facts of this case and being mindful of the aforementioned presumption of constitutionality, this Court is not persuaded the Mississippi use-tax exemption for newspapers impermissibly infringes upon the limited First Amendment protection afforded plaintiff's commercial speech. *See also Redwood Empire Publishing Co., et al. v. State Board of Equalizat'n,* 207 Cal. App. 3d 1334, 255 Cal. Rptr. 514 (Ct. App. 1989) (surveying federal decisional law addressing the constitutionality of differential regulation of commercial and noncommercial speech).

Finally, plaintiff argues the statutory newspaper exemption, as well as defendant's interpretation of it to cover newspaper advertising inserts, violates its federal constitutional equal-protection guarantee because there is no rational basis for such differential treatment. Generally, the Equal Protection Clause is satisfied where there is a plausible policy reason for the classification, the legislative facts on which the classification is apparently based rationally may have been

considered true by the government, and the relationship of the classification to its goal is not so attenuated as to render the distinction arbitrary or irrational. *Nordlinger v. Hahn*, __U.S. __, 112 S.Ct. 2326 (1992). This Court, applying the test to this case, finds the statutory use-tax exemption for newspapers and defendant's interpretation that it encompasses newspaper advertising inserts are rationally related to the legislative policy of subsidizing newspapers as a vital source of public information and interpreter between the government and the people. *Grosjean v. American Press Co.*, 297 U.S. 23.

Conclusion

For the reasons stated above, this Court concludes plaintiff's consolidated claim for refund of use tax and interest is without merit and, therefore, should be and it is dismissed. Defendant's counsel is directed to prepare a final Judgment in conformity with this opinion and in accordance with Mississippi Rule of Civil Procedure 58 and Uniform Chancery Court Rule 5.

IT IS SO ORDERED AND ADJUDGED THIS the 21st day of November, 1996.

DENISE OWENS

CHANCELLOR

**SULLIVAN AND PITTMAN, P.JJ., AND McRAE, J., JOIN THIS OPINION.**


**McRAE, JUSTICE, DISSENTING:**

¶53. Perhaps the majority fails to recognize that H. J. Wilson Company was doing business as Service Merchandise, but Service Merchandise Company was paying the applicable taxes. The majority ignores the fact that neither H. J. Wilson Company nor Service Merchandise Company satisfies the statutory requirements of publishing a newspaper and are therefore not entitled to a tax exemption. As a result, I respectfully dissent.

¶54. H. J. Wilson Company, which operates a Service Merchandise franchise, does not have a mailing department. Instead, it relies on its parent company, Service Merchandise Company, to send out flyers, inserts, and advertising circulars, using postage paid for by Service Merchandise. H. J. Wilson Company does not receive credit for the postage, but it receives credit for the gross amount as defined by the State Tax Commission.

¶55. The majority attempts to "analyze" the content of the publications sent out by Service Merchandise Company, on behalf of H. J. Wilson Company, without first determining if either H. J. Wilson Company or Service Merchandise publishes "newspapers." A clear review of the applicable statute reveals that neither company publishes a "newspaper"; accordingly, neither is entitled to an exemption.

¶56. To meet the requirements of being a "newspaper" pursuant to Miss. Code Ann. § 13-3-31 (1), a publication, *inter alia*, cannot be "published primarily for advertising purposes" and cannot be "designed primarily for free circulation or for circulation at nominal rates."[(7)] Miss. Code Ann. § 13-

3-31(1)(c), (h)(Supp. 1997). The advertisements paid for and mailed by Service Merchandise do not disseminate "current news and intelligence of varied, broad and general public interest." Miss. Code Ann. § 13-3-31(1)(g)(Supp. 1997). They are published not only primarily for advertising purposes, but *purely* for advertising purposes. Moreover, the advertisements are designed for free circulation. Accordingly, for sales and use tax purposes, those publications are not newspapers, and neither H. J. Wilson Company nor Service Merchandise Company qualify as publishers. Without meeting this threshold requirement, they cannot receive the newspaper exemption from assessment of Mississippi sales and use tax. Further, the majority cannot reach its discussion of whether the Commission made its determination using content-based criteria.

¶57. Additionally, H. J. Wilson Company used the services of Service Merchandise to send out all the flyers and advertisements. However, H. J. Wilson Company is not even the proper party to question the constitutionality of the Tax Commission's tax assessments. Wilson, doing business as Service Merchandise, is a wholly separate and distinct corporation. In this case Service Merchandise Company receives a complete write-off of the advertisements as an expenditure, and H. J. Wilson Company receives a write-off against the total gross amount that Service Merchandise Company charges them for printing and mailing the advertisements. Apparently, the majority does not recognize this tax "shell game" being played and does not pick up on the effect of what these companies were doing, as the Tax Commission did.

¶58. Service Merchandise Company controls the business operations of its franchisees, including the advertising operations of H. J. Wilson Company. It is undisputed that no use tax exemption exists for advertising materials. It follows that the applicable statute does not allow an exemption for the advertisements mailed out by Service Merchandise Company for H. J. Wilson Company. Because the majority totally misses the point that the advertisements under review do not meet the statutory requirements of a newspaper and neither company is a newspaper publisher, and because the majority unnecessarily addresses the question of whether this is a case of content-based discrimination, I respectfully dissent.

**SULLIVAN, P.J., JOINS THIS OPINION IN PART.**

1. Starting June 1992, the publications were taxed at a use tax rate of seven percent (7%) in accordance with the raise in the applicable Mississippi sales tax rate.

2. The Commission, by Official Order dated April 25, 1990, adopted the criteria used in Miss. Code Ann. § 13-3-31(1) to determine whether a publication qualified for the newspaper exemption from assessment of Mississippi sales and use tax.

3. Miss. Code Ann. § 27-65-3(*l*) defines newspaper for purposes of the sales and use tax as follows:

(*l*) "Newspaper" means a periodical which:

(i) Is not published primarily for advertising purposes and has not contained more than seventy-five percent (75%) advertising in more than one-half (1/2) of its issues during any consecutive

twelve-month period excluding separate advertising supplements inserted into but separately identifiable from any regular issue or issues;

(ii) Has been established and published continuously for at least twelve (12) months;

(iii) Is regularly issued at stated intervals no less frequently than once a week, bears a date of issue, and is numbered consecutively; provided, however, that publication on legal holidays of this state or of the United States and on Saturdays and Sundays shall not be required, and failure to publish not more than two (2) regular issues in any calendar year shall not exclude a periodical from this definition;

(iv) Is issued from a known office of publication, which shall be the principal public business office of the newspaper and need not be the place at which the periodical is printed and a newspaper shall be deemed to be "published" at the place where its known office of publication is located;

(v) Is formed of printed sheets; provided, however, that a periodical that is reproduced by the stencil, mimeograph or hectograph process shall not be considered to be a "newspaper"; and

(vi) *Is originated and published for the dissemination of current news and intelligence of varied, broad and general public interest, announcements and notices, opinions as editorials on a regular or irregular basis, and advertising and miscellaneous reading matter.*

The term "newspaper" shall include periodicals which are designed primarily for free circulation or for circulation at nominal rates as well as those which are designed for circulation at more than a nominal rate.

The term "newspaper" shall not include a publication or periodical which is published, sponsored by, is directly supported financially by, or is published to further the interests of, or is directed to, or has a circulation restricted in whole or in part to any particular sect, denomination, labor or fraternal organization or other special group or class or citizens.

For purposes of this paragraph, a periodical designed primarily for free circulation or circulation at nominal rates shall not be considered to be a newspaper unless such periodical has made an application for such status to the Tax Commission in the manner prescribed by the commission and has provided to the Tax Commission documentation satisfactory to the commission showing that such periodical meets the requirements of the definition of the term "newspaper." However, if such periodical has been determined to be a newspaper under action taken by the State Tax Commission on or before April 11, 1996, such periodical shall be considered to be a newspaper without the necessity of applying for such status. A determination by the State Tax Commission that a publication is a newspaper shall be limited to the application of this chapter and shall not establish that the publication is a newspaper for any other purpose.

Miss. Code Ann. § 27-65-3(*l*) (1997) (emphasis added).

4. The fifth element, set forth in Florida Administrative Code Rule 12A-1.008(1)(b)5., used to determine classification of a publication as a newspaper provides in full:

It must routinely contain reports of current events and matters of general interest which appeal to a wide spectrum of the general public. If the publication is intended for general circulation to the public and is devoted primarily to matters of specialized interests such as legal, mercantile, political, religious, or sporting matters, and it contains in addition thereto general news of the day, information of current events, and news of importance and of current interest to the general public, it is entitled to be classed as a newspaper.

*Magazine Publishers of Am., Inc.,* 604 So. 2d at 462 n. 2.

5. The Indiana Tax Court discussed and compared the State Department of Revenue's regulation used to determine if a publication was a newspaper with the similar criteria used in *Magazine Publishers of America, Inc.*; *Southern Living, Inc.*; *Newsweek, Inc.*; *Gallacher*; and *Hearst Corp.* The tax court did not discuss the Pennsylvania Supreme Court's decision in *Magazine Publishers of America v. Commonwealth Dep't of Revenue* as it was decided subsequent to *Emmis Publishing Corp*.

6. This Court is aware that the Mississippi Legislature recently amended Mississippi Code Annotated §27-65-3 to define the term "newspaper," in language substantially similar to section 13-3-31, for the purpose of the Mississippi Sales Tax Law and for related purposes.

7. Similarly, under recently amended Miss. Code Ann. § 27-65-3(l) (Supp. 1997), if a publication is "published primarily for advertising purposes," it cannot qualify as a "newspaper."